In the Matter of ARCHIE ENTERPRISES, INC., et al., Petitioners, v STATE TAX COMMISSION, Respondent.

Third Department, June 2, 1977

*Jerome R. Rosenberg* for petitioners.

*Louis J. Lefkowitz, Attorney-General (Lawrence J. Logan* and *Ruth Kessler Toch* of counsel), for respondent.

KOREMAN, P. J. Petitioners are four affiliated New York State corporations engaged in the publication and sale of comic magazines, and operate from the same address in New York City. The procedure used in publishing and selling magazines is as follows: after the original comic book art work is prepared in black and white at petitioners' New York City office it is sent to an independent contractor named Chemical Color Plate (Color Plate) located in Bridgeport, Connecticut. Color Plate prepares silver prints from the black and white art work and returns the silver prints to petitioners in New York City. The petitioners then add color to the silver prints (referred to as color guides). These color guides are returned to Color Plate in Bridgeport, Connecticut, where they are made into color plates or engravings from which the magazines are printed. The color plates are then shipped from Bridgeport, Connecticut, to another independent contractor, Spartan Printing Co. (Spartan), a division of World Color Press, Inc., located in Sparta, Illinois, which does the actual printing of the magazines.

The contract between the petitioners and Spartan provides that Spartan shall furnish ink and paper, and shall print, bind, and prepare for shipment the number of copies of the magazines ordered by petitioners. The billings to petitioners are based upon a specified amount for the number of copies of

the magazines that are printed. The contract provides further that should there be a change in the cost of paper, ink, or other materials used in the production of the magazines, either upward or downward, the petitioners shall either pay the added cost or receive the benefit of a reduction; and that should Spartan's material supply of paper stock or ink be limited, it shall discontinue supplying such material for products of noncontract customers, and thereafter such supply shall be used and distributed ratably to contract customers based upon their usage.

None of the petitioners file income or franchise tax returns in any other State. After having paid the franchise taxes in New York, petitioners sought a redetermination of the deficiencies assessed against them, or refunds of the franchise taxes already paid, based on their claim that the Spartan plant in Illinois was a regular place of business of petitioners outside New York State so as to qualify them for an allocation of business income under the provisions of section 210 of the Tax Law. Respondent denied the petitions for refunds and affirmed the notices of deficiency. Under the facts as set forth herein respondent determined that the Illinois plant of the independent contractor, Spartan, did not qualify as a regular place of business of the petitioners since no raw material or partly finished goods of the petitioners are shipped to that location for processing; that the petitioners only furnished the color plates or engravings from which the magazines are printed, and that all of the materials such as ink and paper are supplied by Spartan pursuant to the contract; that Spartan is, in essence, a source of supply; and that the location of a supplier does not qualify as a regular place of business of the taxpayers.

The sole issue before this court is whether respondent's determination that petitioners were not entitled to allocate its business income under article 9-A of the Tax Law, because petitioners did not have a regular place of business outside of New York, is supported by substantial evidence.

The franchise tax imposed upon corporations doing business in this State under article 9-A of the Tax Law is measured by entire net income or the portion thereof allocated within the State (Tax Law, § 210, subd 1), "provided, however, that if the taxpayer does not have a regular place of business outside the state * * * the business allocation percentage shall be one hundred percent." (Tax Law, § 210, subd 3, par [a], cl [4].) The

regulations of the Department of Taxation and Finance in effect during the taxable years in question (1970, 1971, 1972) provide in pertinent part that: "Where as a regular course of business, raw material or partially finished goods of a taxpayer are delivered to an independent contractor to be converted, processed, finished or improved, and the finished goods remain in the possession of the independent contractor until shipped to customers, the plant of such independent contractor is considered a regular place of business of the taxpayer." (20 NYCRR 4.11 [b].) Clearly, the terminology "regular place of business" is a broad statutory expression. It has been held repeatedly that while statutory construction is the function of the courts, where the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court's function is limited, and the judicial function is exhausted when a rational basis is found for the conclusion arrived at by the administrative body (*Matter of Howard v Wyman*, 28 NY2d 434; *Matter of Fredonia Prods. v Procaccino*, 53 AD2d 275; *Matter of Condè Nast Pub. v State Tax Comm.*, 51 AD2d 17, app dsmd 39 NY2d 942).

On this record, it is clear that petitioners are strictly in the business of publishing comic books, and not in the business of making engravings. The independent contractor, Spartan, using its own ink, paper, and printing presses, prints, trims, and binds the comic books, and packages them for distribution. This was done by Spartan from engravings sent to it at petitioners' direction by another independent contractor who was in the business of making engravings. We cannot say that there was no factual basis for respondent's finding that the color plates or engravings, sent by petitioners to Spartan for processing, were not a "raw material" or a "partially finished" goods. Under the facts here, the finished product was the comic book itself, produced by Spartan and purchased by petitioners under their contract. In the light of the contract between petitioners and Spartan, we find no merit to petitioners' additional argument that Spartan was an undisclosed agent for them in the purchase of paper so that petitioners would benefit from the lower prices available to Spartan. The contract provisions clearly negate any such theory of agency. Petitioners' claim that the plant of the independent contractor in Connecticut that produces the engravings should also be considered a regular place of business of the taxpayer is equally without merit. It is noted that this argument was not

presented at the hearing before respondent. Since, therefore, respondent's determination is supported by substantial evidence, and has a rational basis under the statute and regulations, we should not disturb it.

The determination should be confirmed, and the petition dismissed without costs.

GREENBLOTT, SWEENEY, MAIN and LARKIN, JJ., concur.

Determination confirmed, and petition dismissed, without costs.