In the Matter of FINCH, PRUYN & Co., INC., Petitioner, v JAMES H. TULLY, JR., et al., Constituting the Tax Commission of the State of New York, Respondents.

Third Department, July 19, 1979

## APPEARANCES OF COUNSEL

*Hancock, Estabrook, Ryan, Shove & Hust (Joseph H. Murphy* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Francis V. Dow* and *Shirley Adelson Siegel* of counsel), for respondents.

## OPINION OF THE COURT

KANE, J.

Petitioner is a New York corporation engaged in the manufacture of fine and high grade paper for books, business forms and written correspondence. At issue in this proceeding is whether some of the chemicals used in the production of that paper are exempt from the New York State sales and compensating use tax as tangible personal property purchased for resale as a physical component part of other tangible personal property. The resolution of that question necessitates a limited recital of the papermaking process and a description of the manner in which the disputed chemicals are employed in that operation.

After pulpwood has been debarked and broken down into small chips, it is fed into a large "pressure cooker" where the natural glues or lignins which bind the wood together are loosened from the cellulose fibers. The resulting precipitant, pulp in liquid form known as "slurry", is then piped into a "blow tank" where the cellulose fibers are literally exploded and the soluble lignins are washed away. The remaining product is then whitened and stored in tanks for subsequent use. Depending on the particular quality of paper desired, it is mixed with other pulps purchased by petitioner and is metered onto a fast moving fine wire screen. The combination is then demoisturized, steamed, dried and pressed onto rolls, finally becoming finished paper.

Chemicals are employed throughout each step of this process. In the cooking stage, the chemicals used are soda ash, ammonia and sulphur dioxide. The sulphur dioxide reacts with the lignins and forms a complex compound, some of which remains in the ultimate fiber that later becomes part of the paper. The portion that does not remain in the fiber is soluble and is washed away, where it is eventually evaporated and burned in the recovery boiler to produce heat to cook more wood. The soda ash and ammonia protect the cellulose fibers and prevent the sulphur dioxide from reacting with

them. While a very small proportion of these items remains in the finished paper, their utilization is an essential ingredient necessary to effectuate the required chemical reaction.

Additional chemicals are used to whiten the slurry, and a small percentage of them also remains in the final product. Gaseous chlorine and caustic soda are separately added to the slurry and cause some of the remaining lignins to become soluble. Sodium hypochloride, a combination of chlorine and caustic soda, is then added to the mixture, creating a white pulp by destroying the ability of the remaining lignins to absorb light. Finally, certain other chemicals, whose function is to prevent decay of the paper and provide a surface treatment for the final product, are also utilized, but they have been found to constitute a substantial part of the finished product and were not held subject to the tax.

Since all of the chemicals at issue play an integral part in the manufacturing process and since detectable amounts of each can be found in the final product, our primary concern for the purpose of tax liability appears to center on whether such remainders constitute component parts of that product. Inasmuch as the facts are not disputed, statutory interpretation, not substantial evidence, becomes the determinative issue.

Section 1110 of the Tax Law imposes a compensating use tax for the use "of any tangible personal property purchased at retail" and a retail sale is defined as "[a] sale of tangible personal property to any person for any purpose, other than (A) for resale as such or *as a physical component part of tangible personal property*" (Tax Law, § 1101, subd [b], par [4], subpar [i], cl [A]; emphasis added). Also pertinent here is subdivision (4) of section 1118 of the Tax Law which provides an exemption for the "use of property which is *converted into or becomes a component part of a product produced for sale by the purchaser*" (emphasis added). Although not promulgated until after the tax periods involved herein, it is helpful to consider section 526.6 (c) (1), (5) of title 20 of the Official Compilation of Codes, Rules and Regulations of the State of New York:

"*Resale exclusion.* (1) Where a person, in the course of his business operations, purchases tangible personal property * * * which he intends to sell * * * as a component part of other property * * * the property * * * which he has purchased will be considered as purchased for resale and there-

fore not subject to tax until he has transferred the property to his customer. This resale exclusion is based on the theory that property * * * should be taxed only once, at the time of the retail sale, and pyramiding of the tax on that specific property * * * is to be avoided. * * *

"(5) The purchase by a vendor of an item of tangible personal property which is sold by him as a physical component part of tangible personal property to a customer is a purchase for resale and therefore is not subject to tax. Items of tangible personal property * * * which are used in manufacturing tangible personal property for sale, but do not become a physical component part of the property manufactured are not purchased for resale".

Clearly, the intent of both the statutes and the regulations is to avoid a pyramiding tax on essential products used in any given manufacturing process. While the matter may be one of first impression in New York, judicial construction of similar language in other States suggests that in this case the chemicals should be exempt from tax. In *State v Southern Kraft Corp.* (243 Ala 223), the exemption was allowed in an operation very similar to petitioner's. The applicable statute provided an exemption for "tangible personal property * * * which enters into and becomes an ingredient or component part of the * * * property * * * [manufactured] for sale" (*supra,* pp 226-227). The same reasoning was followed in cases exempting carbon from electrodes used in making railroad car wheels and oxygen used in steelmaking (*Boswell v Abex Corp.,* 294 Ala 334; *State v United States Steel Corp.,* 281 Ala 553; see, also, *Blackmon v Atlantic Steel Co.,* 130 Ga App 492). Moreover, although exemptions from taxation must be construed against the taxpayer, the reverse is true when the inquiry is directed at whether the property is subject to any tax whatever (see *Matter of Grace v New York State Tax Comm.,* 37 NY2d 193, 196). Here the language of exemption found in section 1118 of the Tax Law simply conforms to the equally specific wording of sections 1110 and 1101 which impose the tax in a definitionally limited manner. Thus, even though the decisions of other jurisdictions are not entirely apposite, they are of some value, for we are not obliged to accord the New York statutory scheme the mechanically strict interpretation applied to true exemptions.

■ ■ In our view, the plain meaning of the enactments precludes taxation of the chemicals purchased and used in the

afore-described process. While only small amounts remain in the finished product, the degree of consumption was not made a statutory factor and the ordinary meaning of a "component" is certainly broad enough to include detectable materials contained in a finished whole. The construction placed upon statutes by the agency responsible for their administration must yield when it is unreasonable or irrational (cf. *Matter of Howard v Wyman,* 28 NY2d 434), and we conclude that the respondent's determination in this matter, if allowed to stand, would disrupt the plain legislative intent not to exact a use tax from the purchase of items that retain a physical identity in products offered for resale. Accordingly, and for the reasons stated, we would grant the petition and annul that determination.

The determination should be annulled, with costs, and the matter remitted to the State Tax Commission for further proceedings not inconsistent herewith.

GREENBLOTT, J. P. (dissenting). Where, as here, the question is one of specific application of a broad statutory term by the agency responsible for administering the statute, the judicial function is limited to determining whether the record contains a rational basis to support the conclusion arrived at by the agency (cf. *Matter of Archie Enterprises v State Tax Comm.,* 57 AD2d 383, 386; see, also, *Matter of UGP Props. v State Tax Comm. of State of N. Y.,* 64 AD2d 316, 318-319). It is settled that the construction given by an agency responsible for administering a statute will be upheld if not unreasonable or irrational *(Matter of Howard v Wyman,* 28 NY2d 434, 438), and a statute authorizing a tax exemption will generally be construed against the taxpayer *(Matter of Grace v New York State Tax Comm.,* 37 NY2d 193). Moreover, the courts may not substitute their judgment for that of the Tax Commission where reasonable minds may differ as to the probative force of the evidence *(Matter of Liberman v Gallman,* 41 NY2d 774, 777-778). Testimony adduced at the hearing revealed that only 1% of the soda ash, ammonia, sulphur dioxide and caustic soda became a component part of the finished product, and that all but a small portion of these chemicals were washed away from the pulp. Moreover, the testimony indicated that these chemicals, including those used in the whitening process, were not a necessary part of the paper, and that petitioner did not intend to include them in the final product. Applying the above general principles, we are of the view that

there is a rational basis for the commission's determination that these chemicals were not purchased as a physical component part of tangible personal property (Tax Law, § 1101, subd [b], par [4], subpar [i], cl [A]) or that they became a component part of a product produced for sale by petitioner (Tax Law, § 1118, subd [4]).

We disagree with the conclusion of the majority that the determinative issue is one of statutory interpretation. In our view, the sole question is one of substantial evidence, i.e., whether the chemicals used in the manufacture of the paper became a component part of the paper or whether they were consumed in the manufacturing process. The State Tax Commission found that the chemicals used in the manufacture of the paper were consumed in the papermaking process and did not become a component part of the final product. Since this determination is supported by substantial evidence, we should not disturb it.

STALEY, JR., and MIKOLL, JJ., concur with KANE, J.; GREENBLOTT, J. P., and MAIN, J., dissent and vote to confirm in a separate memorandum by GREENBLOTT, J. P.

Determination annulled, with costs, and matter remitted to the State Tax Commission for further proceedings not inconsistent herewith.