■ In the Matter of J. Beres & Sons Dairy, Inc., Petitioner, v J. Roger Barber, as Commissioner of the New York State Department of Agriculture and Markets, Respondent.—Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Commissioner of Agriculture and Markets of the State of New York, which conditionally revoked petitioner's milk dealer's license and imposed a penalty of $2,500. Petitioner operates a dairy under a milk dealer's license issued by respondent. Pursuant to notices of hearing dated January 31, 1978 and October 23, 1978, a hearing was held on December 11, 1978 to consider revoking petitioner's milk dealer's license. On May 8, 1979, respondent canceled petitioner's milk dealer's license unless, within 30 days, petitioner complies in full with each of the following conditions: (1) Discontinues all sales of milk at its premises to unlicensed milk dealers; (2) Commences to maintain and make available to the department all records and information required by 1 NYCRR Parts 21 and 25; and (3) Provides assurance to the department by written agreement that it will hereafter comply in full with the Agriculture and Markets Law and all applicable rules and regulations. In this proceeding, petitioner first contends that its sale of milk to Saville's Market was not a sale to an unlicensed milk dealer, but, rather, was a sale to an exempt store under subdivision 3 of section section 257 of the Agriculture and Markets Law. Subdivision 4 of section 253 of the Agriculture and Markets Law provides, in part, as follows: " 'Milk dealer' means any person who purchases, handles or sells milk, or bargains for the purchase or sale of milk, including brokers and agents. Each corporation which if a natural person would be a milk dealer within the meaning of this article, and any subsidiary and affiliate of such corporation similarly engaged, shall be deemed a milk dealer within the meaning of this definition". Subdivision 10 of section 253 provides: " 'Store' means an individual business establishment at one location including a grocery store, hotel, restaurant, soda fountain, dairy products store, automatic milk vending machine, gasoline station or a similar mercantile establishment offering goods and/or services at retail to individual consumers. The commissioner may after due notice and public hearing define as a store such other mercantile establishment as he finds conforms to the definition as herein provided." Clearly, if the Saville Market purchases, handles or sells milk, it is a milk dealer under the Agriculture and Markets Law. Petitioner contends also that if the Saville Market is a milk dealer, then under the circumstances here, Saville was exempt from obtaining a milk dealer license under the provisions of subdivision 3 of section 257 of the Agriculture and Markets Law. All milk dealers are subject to the licensing provisions of subdivision 1 of section 257. However, a milk dealer which is also a store is exempted from the licensing

requirements if it meets all the conditions set forth in subdivision 3 of section 257 of the Agriculture and Markets Law. The seven conditions for such an exemption are explicitly listed in the statute, and Saville Market fails to meet the conditions set forth in section 257 (subd 3, par [e]). That paragraph provides a store shall be exempt from the license requirements if such store "Does not deliver or transport or cause to be delivered or transported milk to a store or stores, except milk delivered to such store by a licensed milk dealer or milk dealers." It is conceded that Saville Market picked up milk at petitioner's premises and transported it back to its store for resale. Since Saville Market is a milk dealer which does not qualify for the exemption from licensing because it transported milk to a store, respondent correctly determined that petitioner's sales to Saville Market violated subdivision 1 of section 257. Petitioner next contends that subdivision 3 of section 257 is unconstitutional on its face and in its enforcement. Petitioner argues that under the facts herein, subdivision 3 of section 257 should be declared unconstitutional, since there is no rational basis for its limitations and no public interest being served by so restricting the sale of milk to a retailer for subsequent sale at its own store, and further, that the section is unconstitutionally vague. Under paragraph (e) of subdivision 3, a store which transports milk to a store does not meet the exemption provided therein. No ambiguity is present. A store may only sell milk delivered by a licensed milk dealer if it seeks to claim the exemption. The statute is clearly constitutional. Respondent has properly exercised his statutory responsibilities in a constitutional manner and petitioner has provided no evidence to the contrary. Petitioner's final contention is that the hearing held by the Department of Agriculture and Markets was not in conformity with the requirements of due process. Petitioner claims that the hearing officer was also allegedly a part of the unit investigating the charges against petitioner, and that such involvement would undoubtedly cause him to be biased and prejudiced. Petitioner appeared with his attorney and fully participated in the hearing, and made no objection to the designated hearing officer. There is no evidence that this hearing officer participated in the investigation, although he was an employee of the Department of Agriculture and Markets. The combination of investigatory, prosecutory and quasi-judicial functions in a single administrative agency is not considered to be a denial of due process (Komyathy v Board of Educ., 75 Misc 2d 859). Section 258-c of the Agriculture and Markets Law explicitly places the responsibility of determining whether a milk dealer's license should be revoked upon the Commissioner of Agriculture and Markets. The commissioner duly delegated the hearing officer to preside at the hearing. The hearing officer reported his findings and recommendations to the commissioner, who alone made the determination being reviewed herein. With respect to the hearing officer's conducting the hearing, the record reveals that he was extremely fair. Petitioner asserts that it was error for the hearing officer to refuse to accept evidence of alleged violations by dealers other than petitioner. This refusal was proper (Matter of Bell v New York State Liq. Auth., 48 AD2d 83). The hearing herein complied with all the requirements of due process. In addition, the commissioner's conclusion that petitioner failed to keep and furnish the records required of it is fully supported by the preponderance of the evidence. Determination confirmed, and petition dismissed, without costs. Greenblott, Sweeney and Staley, Jr., JJ., concur.

Mahoney, P. J., and Kane, J., dissent and vote to annul in the following memorandum by Kane, J. Kane, J. (dissenting). In our view, the Saville Fruit and Produce Market plainly qualified as a "store" (Agriculture and

Markets Law, § 253, subd 10) and was exempt from the licensing requirements pursuant to subdivision 3 of section 257 of the .Agriculture and Markets Law. Accordingly, petitioner was not guilty of selling milk to an unlicensed dealer (Agriculture and Markets Law, § 257, subd 1). Saville, a family-owned corner market in Orchard Park, New York, undoubtedly met six of the seven conditions required for exemption, and it would be irrational to conclude that it ran afoul of the remaining qualification by accepting delivery of milk at petitioner's dairy in Lackawanna, New York. Although we agree with the majority that the disputed condition found in section 257 (subd 3, par [e]) of the Agriculture and Markets Law is not unconstitutionally vague, its meaning is hardly unambiguous. Before it and two other qualifications were added to the subdivision in 1976 (L 1976, ch 247, § 3), a store could obtain exempt status provided it sold no more than 3,000 pounds of milk in any month for off-premises delivery (Agriculture and Markets Law, § 257, subd 3, par [d]). Since no amount of milk whatever could be delivered to certain establishments (Agriculture and Markets Law, § 257, subd 3, par [c]), the statutory plan obviously contemplated that a store might transport limited quantities of milk to some of its retail customers without jeopardizing its exemption. These provisions were not altered by the subsequent amendment and it is a .familiar principle that all parts of a statute are to be construed and harmonized in furtherance of the underlying purpose of the legislation (McKinney's Cons Laws of NY, Book 1, Statutes, §§ 96-98). The evident intent of the exemption mechanism, at least in part, is to free small retail outlets from the burdens of the licensing requirement without yielding all control over the distribution of milk. Saville was and remains free to deliver a restricted quantity of milk to certain purchasers and there is no assertion that such an operation is of an inherently different character than the movement of milk from a supplier to its place of business. Thus, the newer qualification at issue in this proceeding makes sense only if it is interpreted to mean that a store may not haul more than 3,000 pounds of milk in any month from its licensed sources. The regulatory framework is advanced by preventing large retail chains from using their equipment to ship vast quantities of milk over great distances after purchasing it directly from a licensed dealer, but it would be unreasonable to construe the challenged paragraph in the manner respondent has adopted. Considering the other exemptions already contained in the statute (Agriculture and Markets Law, § 257, subds 2, 4), it would be pointless to think that the Legislature intended to require a license of all who transport milk through the choice of such ambiguous wording. Inasmuch as this proceeding concerns a question of statutory construction, as opposed to one of substantial evidence *(Matter of Finch, Pruyn & Co. v Tully,* 69 AD2d 192, 194), we would annul the finding of sales to an unlicensed dealer and remit the matter to respondent.