KUSKIN, J.T.C.
In these consolidated appeals, each of the plaintiffs seeks á refund of New Jersey sales and use taxes paid by it in connection with the purchase of “hotel amenities.” The amenities include, without limitation: writing pads; stationery; postcards; pens; matches; sewing kits; shoeshine cloths or pads; and toiletries including soap, shampoo, conditioner, shower caps, lotion, shower gel, and mouthwash.
The parties have filed cross-motions for summary judgment based on stipulated facts. These motions require interpretation of the following provisions of the New Jersey Sales and Use Tax Act, N.J.S.A 54:32B-1 to -29:
(a) N.J.S.A 54:32B-3(a) which imposes a sales tax of six percent on “[t]he receipts from every retail sale of tangible personal property, except as otherwise provided in this act;”
(b) N.J.S.A 54:32B-6(A) which imposes a compensating use tax, also of six percent, for the use in New Jersey “of any tangible personal property purchased at retail;”
(c) N.J.S.A 54:32B-2(b) which defines “purchase at retail” as “[a] purchase by any person at a retail sale;” and
(d) N.J.S.A 54:32B-2(e)(l) which, in relevant part, defines a “retail sale” as “[a]
sale of tangible personal property to any person for any purpose, other than (A) for resale either as such or as converted into or as a component part of a product produced for sale by the purchaser____”
Plaintiffs acknowledge that the hotel amenities are tangible personal property but contend that their purchases were not “retail sales.” Specifically, plaintiffs assert that they purchased hotel amenities for the purpose of resale either “as such” or as “a component part of a product [ (hotel rooms) ] produced for sale by [plaintiffs].”
For all tax periods in issue, each plaintiff operated a “hotel” as that term is defined in N.J.S.A. 54:32B-2(j) (that is, “[a] building
*83 ... which is regularly used and kept open as such for the lodging of guests”). Each plaintiff collected, and remitted to the Director of the New Jersey Division of Taxation (the “Director”), a sales tax of six percent on the rents charged for hotel room occupancy pursuant to N.J.S.A. 54:32B-3(d), which imposes such tax on “[t)he rent for every occupancy of a room or rooms in a hotel in this State — ” The customary practice for hotels such as those operated by the plaintiffs is to provide hotel guests with at least some of the hotel amenities, and each plaintiff did so. The cost of the amenities provided by each plaintiff was low in relation to the room rent charged by each for a hotel room. The bills issued by each plaintiff to its guests did not include separate charges for the hotel amenities, but did contain separate charges for the sales tax of six percent imposed on room rents.
The plaintiffs paid the sales or use tax on their respective purchases of hotel amenities and filed claims for refunds as follows:
PLAINTIFF REFUND AMOUNT TIME PERIOD
Adamar of New Jersey $14,945.02 01/01/92-03/31/95
$ 5,166.72 03/01/92-07/31/96
Bally’s Park Place $84,549.32 10/01/90-06/30/95
Comfort Inn-West $ 1,404.52 07/01/93-07/31/95
Great Bay Hotel & Casino $13,694.58 10/01/89-12/31/94
Harrah’s Atlantic City $15,822.37 01/01/90-12/31/94
Hyatt Corporation $11,756.02 01/01/92-08/31/95
Resorts International Hotel, Inc. $38,211.09 01/01/91-05/31/95
Trump Castle Hotel & Casino $10,248.98 04/01/93-02/28/95.
The Director denied all such claims, and each plaintiff filed a protest and request for a hearing with the Director. After such hearings were concluded, the Director issued Final Determinations again denying all refund claims. Thereafter, each plaintiff filed a timely complaint in the Tax Court contesting such denial.
Plaintiffs’ substantive contentions are the following:
1) providing hotel amenities to hotel guests constitutes a “resale” as contemplated by the definition of “retail sale” in N.J.SA 54:32B-2(e)(l)(A), even though plaintiffs do not charge separately for the amenities and the resale transactions are not separately taxed as such. As a result, plaintiffs’ purchases of the *84 amenities were for the purpose of resale and thus excluded from the definition of taxable retail sales; and
2) plaintiffs’ resales of hotel amenities were, in fact, subject to sales tax because an unallocated portion of the sales tax on hotel room rents was attributable to such resales. As a result, imposing sales or use tax liability on plaintiffs’ purchases of the hotel amenities results in improper double taxation.
The Director’s response to plaintiffs’ first contention is that the hotel amenities were not “sold” or “resold” to hotel guests, but were provided as incidental to hotel lodging, as part of the bundle of services and goods which comprise a hotel room. The Director cites the absence from plaintiffs’ hotel room bills of separate charges for the hotel amenities as confirming his position. In response to plaintiffs’ second contention, the Director asserts that the tax on hotel room rents is a separate tax, which does not include or incorporate a sales or use tax on “resales” of hotel amenities. If, therefore, the sales of hotel amenities from suppliers to the plaintiffs are not subject to tax as “retail sales,” both those initial sales and the alleged resales by plaintiffs to hotel guests, in the Director’s'view, would escape taxation, contrary to the intent and purpose of the Sales and Use Tax Act.
Fedders Financial Corp. v. Director, Div. of Taxation, 96 N.J. 376, 476 A.2d 741 (1984) sets forth the principles of statutory construction to be utilized in interpreting taxing statutes.
[Wjhen interpretation of a taxing provision is in doubt, and there is no legislative history that dispels that doubt, the court should construe the statute in favor of the taxpayer____ In [Kingsley v. Hawthorne Fabrics, 41 N.J. 521, 197 A.2d 673 (1964) ] at 528-29 [197 A.2d 673], we quoted approvingly the following language from Gould v. Gould, 245 U.S. 151, 153, 38 S.Ct 53 [53], 62 L.Ed. 211, 213 (1917):
In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In ease of doubt they are construed most strongly against the government, and in favor of the citizen.
The Gould principle that statutes levying taxes should be construed against the government in case of doubt has been subject to some criticism. We continue to adhere to the view that our task is to ascertain the legislative intent. When the statutory language is unclear and the legislative history is wanting, the doubt referred to in Gould exists and its principle is applicable: This situation is to be distinguished from the one in which the taxpayer seeks an exemption from a taxing *85 statute. Then the probable legislative intent is one of inclusion and exemptions are to be construed narrowly.
[Id at 385-86, 476 A.2d 741 (citations and footnote omitted).]
Plaintiffs argue that, under the Fedders Financial principles, the definition of “retail sale” in NJ.S.A. 54:32B-2(e)(l)(A) is limited by the exclusion of sales for resale, and, consequently, (1) the Director has the burden of demonstrating that plaintiffs’ purchases of hotel amenities are other than for resale, and (2) all doubts as to whether such purchases are taxable “retail sales” should be resolved in favor of plaintiffs. The Director responds that: (a) the Sales and Use Tax Act reflects a “legislative intent ... of inclusion,” (b) the exclusion of sales for resale from the definition of “retail sale” is in the nature of an exemption, and (c) under the Fedders Financial principles, doubts as to whether plaintiffs’ purchases of hotel amenities are taxable “retail sales” should be resolved in favor of the Director.
Plaintiffs’ position that the exclusion of sales for resale is a limitation on the definition of “retail sale” finds support in Finch, Pruyn & Co., Inc. v. Tully, 69 A.D.2d 192, 419 N.Y.S.2d 232 (1979). There, the New York court considered § 1101(b)(4)(i)(A) of the New York Tax Law (McKinney), a sales and use tax statute, which excludes sales for resale from the definition of “retail sale” just as N.J.S.A. 54:32B-2(e)(l)(A) does. The court applied principles of statutory construction similar to those set forth in Fedders Financial and held that § 1101(b)(4)(i)(A) imposes the tax “in a definitionally limited manner.” Id. at 195, 419 N.Y.S.2d 232.[1]
Both the New York and New Jersey sales and use tax statutes contain language comprehensive in scope. Notwithstanding the view of the New York Appellate Division in Finch, Pruyn, I interpret the relevant New Jersey statutes as reflecting “a proba *86 ble legislative intent ... of inclusion.” Fedders Financial, supra, 96 N.J. at 386, 476 A.2d 741. N.J.S.A 54:32B-3(a), for example, imposes a sales tax on “[t]he receipts from every retail sale of tangible personal property, except as otherwise provided in this act” (emphasis supplied). N.J.S.A 54:32B-6(A) uses similarly inclusive language in imposing a compensating use tax on “the use within this State ... (A) of any tangible personal property purchased at retail.” The definition of “retad sale” in N.J.S.A 54:32B-2(e)(l) is also expansive, first defining a retad sale as “[a] sale of tangible personal property to any person for any purpose” and then excepting a sale “for resale either as such or as converted into or as a component part of a product produced for sale by the purchaser.” Finady, N.J.S.A 54:32B-12(b) provides, in relevant part, as fodows:
For the purpose of the proper administration of this act and to prevent evasion of the tax hereby imposed, it shall be presumed that all receipts for property or services of any type mentioned in subsections (a), (b) and (e) of section 3 ... are subject to tax until the contrary is established, and the burden of proving that any such receipt ... is not taxable hereunder shall be upon the person required to collect tax or the customer.
The function of the principles of statutory construction set forth in Fedders Financial is to assist the court in determining legislative intent when the language of a statute is not clear on its face. Regardless of which principle applies, and which party has the burden of persuasion, the court’s “duty in construing a statute is to determine the intent of the Legislature.” AMN, Inc. v. South Brunswick Tp. Rent Leveling Bd. 93 N.J. 518, 525, 461 A.2d 1138 (1983). In performing that duty here, I conclude, based on the statutory language discussed in the preceding paragraph, that the definition of “retad sale” in N.J.SA 54:32B-2(e)(1)(A) should be interpreted to effectuate a legislative intent that the Sales and Use Tax Act be broadly inclusive. Plaintiffs, therefore, have the burden of demonstrating that their purchases of hotel amenities are not subject to tax, and any doubt as taxability should be resolved in favor of the Director.
Plaintiffs cite Burger King, Inc. v. State Tax Comm’n, 51 N.Y.2d 614, 435 N.Y.S.2d 689, 416 N.E.2d 1024 (1980), as the legal *87 basis for their contention that, under the stipulated facts, their purchases of hotel amenities were for the purpose of resale to hotel guests and, consequently, are excluded from the definition of retail sale. In that case, the court addressed the issue of whether wrappers for hamburgers and french fries, and cups for beverages, were purchased for resale as such, so that the initial purchases by Burger King were not subject to sales tax. Section 1105(a) of the New York Tax Law (McKinney) imposes a sales tax on “[t]he receipts from every retail sale of tangible personal property, except as otherwise provided in this article.” Section 1101(a)(4) of such Law defines a “retail sale” as “[a] sale of tangible personal property to any person for any purpose, other than (A) for resale as such or as a physical component part of tangible personal property----” The New York Court of Appeals relying on the so-called “container” cases, e.g. American Molasses Co. of New York v. McGoldrick, 281 N.Y. 269, 22 N.E.2d 369 (1939), Dairylea Cooperative Inc. v. State Tax Comm’n, 41 A.D.2d 312, 342 N.Y.S.2d 761 (1973), held that the items in question were purchased for resale as such. The Court noted, with respect to the container cases:
The nub of these cases is that a sale is not one at retail when a supplier sells containers to a wholesaler or manufacturer, who then sells his product packed in these containers either to a retailer or to an ultimate consumer. The courts reasoned that the containers, although bought to be resold as “an incident to the sale of the contents,” were nonetheless sales for resale as such. The cartons although “not inseparable” from the contents, were, in this context, being resold “as containers.”
Id. at 692, 416 N.E.2d at 1028 (citations omitted).]
Applying this reasoning to the Burger King wrappers and cups, the Court held that the packaging is “a critical element of the final product sold to customers. So regarded, the packaging material in as much a part of the final price as is the food or drink item itself. It would be exalting form over substance, therefore, to hold that a resale of these paper products does not take place merely because Burger King does not list a separate price.” Id. at 693, 416 N.E.2d at 1028.
Plaintiffs assert that, because providing the hotel amenities is (as stipulated) “a customary industry practice for hotels such as *88 those operated by the Plaintiffs,” the amenities are a “critical element of the final product sold to customers” and, thus, are resold within the reasoning of the Burger King decision. I disagree. Although the hotel amenities may be expected by guests in plaintiffs’ hotels, the amenities are not essential to the providing, or occupancy, of a hotel room in the same sense that a wrapper is essential to the sale of a hamburger or a cup is essential to the sale of a beverage.
The hotel amenities provide an element of comfort and convenience for hotel guests in the same sense that napkins, straws, stirrers and plastic utensils provide comfort and convenience to customers purchasing take-out beverages in a fast food restaurant. In Celestial Food of Massapequa Corp. v. New York State Tax Comm’n, 63 N.Y.2d 1020, 484 N.Y.S.2d 509, 473 N.E.2d 737 (1984), the New York Court of Appeals limited the scope of the Burger King decision and held that a restaurant’s purchase of napkins, straws, stirrers, and plastic utensils was not for the purpose of resale.
Unlike the packaging in Burger King, the items respondent here seeks to exclude from sales tax are not a critical element of the product sold and thus are not purchased “for resale as such.” Whereas a cup of coffee cannot be purchased without a container, the same cannot be said of napkins, stirrers and utensils, which are more akin to items of overhead, enhancing the comfort of restaurant patrons consuming the food products. The Appellate Division’s reasoning in this case, that because "the fast food customer expects to be provided with a stirrer for coffee, a straw for soft drinks, plastic utensils for food, and napkins for cleanliness” such items are purchased “for resale as such,” has potentially limitless application. Although the cost of such items may well be taken into account by the restauranteur when setting the price of food, so are other amenities a restaurant patron expects, such as service, utilities and fixtures, which do not become a part of the product being sold merely because their cost is a factor in determining the price a customer pays. Only when, as in Burger King, such items are necessary to contain the product for delivery can they be considered a critical element of the product sold, and excluded from sales tax.
[Id. at 510, 473 N.E. 2d at 738 (citation omitted).]
See also Dunkin’ Donuts Mid-Atlantic Distribution Ctr. Inc. v. Tax Appeals Tribunal of the State of New York, 225 A.D.2d 903, 639 N.Y.S.2d 168 (1996) where the Appellate Division of the New York Supreme Court held that purchases of wax tissue paper, used in Dunkin’ Donuts shops to pick up individual donuts, sepa *89 rate donuts in boxes and line the tops or bottoms of boxes, were not for resale as such because the paper was not required to contain the donuts and, therefore, was not a “critical” element of the product. Id. at 904, 639 N.Y.S.2d 168.
That the Burger King principles are not applicable in the hotel amenities context, even in New York, is confirmed by Helmsley Enters. Inc. v. Tax Appeals Tribunal of the State of New York, 187 A.D.2d 64, 592 N.Y.S.2d 851, leave to appeal denied, 81 N.Y.2d 710, 600 N.Y.S.2d 197, 616 N.E.2d 854 (1993). The plaintiff therein relied on Burger King in support of a claim that its purchases of hotel guest room furniture, furnishings, and guest consumables (equivalent to the hotel amenities at issue herein) were not subject to sales tax because such purchases were “for resale as such.” The New York court held as follows:
At common law, “the business of an innkeeper is of a quasi public character.” The innkeeper owes the guest a level of “service, attention, convenience and luxury” commensurate with the character of the facility and what may be implied from the charges for the accommodation. “The innkeeper holds himself out as able and willing to entertain guests for hire, and, in the absence of a specific contract, the law implies that he will furnish such entertainment as the character of his inn and reasonable attention to the convenience and comfort of his guests will afford.” In view of the foregoing obligations of a hotelier to “entertain” by providing some level of luxury for the “convenience and comfort” of guests, it was entirely reasonable for the Tax Appeals Tribunal to characterize petitioner’s true function as that of providing a service, to which guest room furniture, furnishings and consumables are purely incidental amenities____ [T]he provision of furniture, furnishings and consumables in guest rooms is “inseparably connected” to petitioner’s essential business of serving the comfort and convenience of guests and, therefore, furnishing those items cannot be considered separate transactions for sales tax purposes. They were “more akin to items of overhead, enhancing the comfort of ... patrons.”
[Id. at 69, 592 N.Y.S.2d 851 (citations omitted).]
I accept the Helmsley analysis and conclude that plaintiffs did not resell the hotel amenities “as such.” This conclusion is consistent not only with Helmsley but also with the weight of authority throughout the United States. Florida Hotel and Motel Ass’n Inc. v. State of Florida, Dep’t of Revenue, 635 So.2d 1044 (Fla.Dist.Ct.App.1994) (holding that purchases by hotels of guest room furniture, furnishings, and consumables such as soap and stationery were not purchases for resale under a statute which *90 defined “retail sale” as “a sale to a consumer or to any person for any purpose other than for resale in the form of tangible personal property or services taxable under this part”); Greensburg Motel Assocs., L.P. v. Indiana Dep’t of State Revenue, 629 N.E.2d 1302 (Ind.Tax Ct.1994) (holding that a motel’s purchases of guest room furniture, furnishings, and consumable items such as shampoo, soap, pens, and stationery were not purchases for resale under a statute which then exempted from sales tax liability “[transactions involving tangible personal property ... if the person ... acquires it for resale ... in the ordinary course of his business without changing the form of the property”); Sine v. State Tax Comm’n of Utah, 15 Utah 2d 214, 390 P.2d 130 (1964) (holding that a motel’s purchases of guest room items such as towels, blankets, soap, postcards, stationery, and drinking glass covers were not exempt from tax liability under a statute which exempted “property which enters into and becomes an ingredient or component part of the property which a person engaged in the business of manufacturing, compounding for sale, profit or use manufactures or compounds”); Hotels Statler Co., Inc. v. District of Columbia, 199 F.2d 172 (D.C.Cir.1952) (holding that a hotel’s purchases of guest room items such as stationery, soap, toilet tissue, and bed linens did not qualify for exemption from sales tax under a statute providing such exemption for sales “in which the purpose of the purchaser is to resell the property so transferred in the form in which the same is, or is to be, received by him, or to use or incorporate the property so transferred as a material or part of other tangible personal property to be produced for sale by manufacturing, assembling, processing or refining”); Theo. B. Robertson Prods. Co., Inc. v. Nudelman, 389 Ill. 281, 59 N.E.2d 655 (1945) (holding that a hotel’s purchases of guest room items such as towels, drinking cups, toilet tissue, and bar soap were taxable under a statute which defined a “sale at retail” as “any transfer of the ownership of or title to tangible personal property ... not for the purpose of resale in any form as tangible personal property ...: Provided that the property purchased is deemed to be purchased for the purpose of resale ... to the extent to which it is resold as an ingredient of an intentionally produced product *91 or byproduct of manufacturing”). See also City of Colorado Springs v. Inv. Hotel Properties, Ltd,., 806 P.2d 375 (Colo.1991) (holding that a hotel’s purchases of furniture and fixtures, carpets and drapes were not purchases for resale under statutes which excluded from taxation “a wholesale sale or purchase for taxable resale”); Broadmoor Hotel, Inc. v. Dep’t of Revenue, State of Colorado, 773 P.2d 627 (Colo.Ct.App.1989) (holding that a hotel’s purchases of snacks provided on a complimentary basis to bar patrons were not purchases for resale under use tax statutes which defined retail sales as excluding “wholesale sales,” that, is, sales “by wholesalers to retail merchants, jobbers, dealers, or other wholesalers for resale”); Kentucky Bd. of Tax Appeals v. Broum Hotel Co., 528 S.W.2d 715 (Ky.1975) (holding that a hotel’s purchases of glassware, linens, and silverware were not purchases for resale under a statute defining a retail sale as “a sale for any purpose other than resale in the regular course of business of tangible personal property”). Cf. S & R Hotels v. Fitch, 634 So.2d 922 (La.Ct.App.1994) (holding that, under a statute defining “retail sale” as “a sale to a consumer or to any other person other than for resale in the form of tangible personal property,” a hotel’s purchases of food and beverages for service to guests as complimentary breakfasts were purchases for resale where providing complimentary breakfasts was not “a routine part of providing hotel service.”) Id. at 926. “[WJhere [,however,] a hotel ... purchases goods to be used in furnishing a traditional service to customers, the purchase of the goods is not for resale----” Id. at 925 (relying on Helmsley Enterprises Inc. v. Tax Appeals Tribunal of the State of New York, supra, 187 A.D.2d 64, 592 N.Y.S. 2d 851).
Plaintiffs contend that, even if their purchases of hotel amenities were not for the purpose of “resale as such,” the purchases nevertheless are not subject to sales or use tax because they were for the purpose of resale as a “component part” of a “product produced for sale” within the meaning of N.J.S.A. 54:32B-2(e)(1)(A). Plaintiffs distinguish Helmsley, and the other cited out-of-state cases, either on the grounds that such cases *92 dealt only with resales “as such” or on the grounds that the courts were interpreting statutory language different from the applicable New Jersey statutory provisions. Plaintiffs point, in particular, to differences between the definitions of “retail sale” appearing in N.J.S.A 54:32B-2(e)(l)(A) and in § 1101(b)(4)(i)(A) of the New York Tax Law. These definitions are applicable to sales and use taxation in both states (compare N.J.S.A 54:32B-3(a) with New York Tax Law § 1105(a) (McKinney) and N.J.S.A 54:32B-6(A) with New York Tax Law § 1110(a)(A) (McKinney)). The New York definition of “retail sale” is “[a] sale of tangible personal property to any person for any purpose, other than (A) for resale as such or as a physical component part of tangible personal property----” New York Tax Law, § 1101(b)(4)(i)(A) (McKinney). Plaintiffs note that the New Jersey definition omits the adjective “physical” before the word “component” and substitutes “product produced for sale” for the phrase “tangible personal property.” Plaintiffs conclude from this analysis that, under the New Jersey statutory language, the hotel amenities can be, and are, a component part (even though not physically attached or incorporated) of a product, the hotel room, which need not be, and is not, tangible personal property.
The New Jersey and New York definitions of “retail sale” obviously are worded somewhat differently, and there is no legislative history in New Jersey to explain the difference. The meaning of the New Jersey language (“component part of a product produced for sale”) can, however, be derived from eases construing the New Jersey and New York statutes imposing a compensating use tax. In both states, the use tax statutes contain an exemption for “the use of property which is converted into or becomes a component part of a product produced for sale.” Compare N.J.S.A 54:32B-11(4) with New York Tax Act § 1118(4) (McKinney). The New York courts, in construing the phrase “component part of a product produced for sale” as used in § 1118(4) have held that such phrase applies only if there is a “physical nexus of the components to the final product.” Fannon & Osmond Photography, Inc. v. Comm’r of Taxation and Finance, 176 A.D.2d 1014, 1015, 574 N.Y.S.2A 866, 868 (1991). The *93 New Jersey Tax Court has held that the exemption under N.J.S.A. 54:32B-11(4) “contemplates the sale of a product ... [and] does not apply to a sale of services.” Polaris Corp. v. Director, Div. of Taxation, 12 N.J.Tax 70, 73 (Tax 1991).
There is no “physical nexus” between the hotel amenities and the hotel room. The mere placement of the amenities in the room does not create such a nexus, and the amenities are not a “component part,” physical or otherwise, of the hotel room. Furthermore, the hotel room is not a “product produced for sale” in the statutory sense. Plaintiffs describe the room as a hybrid of product and service. The statutory reference to a “product produced for sale” envisions the manufacture, fabrication, compounding or assembly of tangible personal property in which the “component” is incorporated. A hotel room furnished and decorated by one of the plaintiffs and available for rent on a nightly basis (a hybrid of real property, personal property, and services) located in building (real property) constructed by one of the plaintiffs is not such a “product,” and the hotel amenities are not, in any sense, incorporated into the room. See Metpath, Inc. v. Director, Div. of Taxation, 96 N.J. 147, 474 A.2d 1065 (1984), where the Supreme Court held that, under N.J.S.A 54:32B-8.20, a chemical catalyst qualified for exemption from sales tax only if used to produce tangible personal property and did not so qualify when used to produce a service. The taxpayer asserted that the applicable statutory language did not expressly require usage for the production of tangible personal property in order to qualify for exemption. The Court rejected this argument, noting that “many exemption subsections apply only to tangible personal property without using those words.” Id. at 154, 474 A.2d 1065.
I conclude, based on the foregoing analysis, that the hotel amenities are not resold to hotel guests, as “a component part of a product produced for sale,” nor are they resold “as such.” The hotel amenities simply are not sold[2] to hotel guests. It is common *94 knowledge, and I will take judicial notice (N.J.R.E. 201(b)) that the hotel amenities at issue herein are not always used or consumed by hotel guests or removed from hotel rooms by the guests. Presumably, the amenities, if totally unused, are reusable and, in fact, reused. Furthermore, guests at any of the plaintiffs’ hotels pay no separate or identifiable consideration for the hotel amenities and could not obtain lower room rates by agreeing to exclude or remove from their rooms the hotel amenities package provided as a matter of course by each of the plaintiffs.
Plaintiffs assert that, under Fairlawn Shopper, Inc. v. Director, Div. of Taxation, 98 N.J. 64, 484 A.2d 659 (1984) and Today Newspapers, Inc. v. Director, Div. of Taxation, 98 N.J. 75, 484 A.2d 665 (1984), payment of a separate price for the hotel amenities is not required for a resale to occur. In those cases the Supreme Court affirmed findings by the Tax Court that, in paying for advertising space in newspapers distributed free-of-charge, advertisers both purchased the space and subsidized the price per copy otherwise payable by the newspaper readers. The Court adopted the Tax Court’s conclusion that the advertisers would not purchase space without a guarantee that the newspapers would be distributed to the public. In the terminology of Burger King, Inc. v. State Tax Comm’n, supra, 435 N.Y.S.2d 689, 416 N.E.2d 1024, the distribution of the newspapers was a “critical element” of what the advertisers purchased. As a result, purchases by a newspaper publisher of printing services and materials were purchases for resale to the public, with the consideration for the resale supplied by third parties — the advertisers.
The stipulated facts in the matters before me are markedly different, and distinguishable, from those at issue in Fairlawn Shopper, Inc. and Today Newspapers, Inc. Here, the hotel amenities are not critical elements of the hotel rooms, and the *95 room rents paid by hotel guests are in no respect attributable or allocable to the purchase of hotel amenities. Prospective hotel guests do not select a hotel based on its amenity package, or agree to pay room rent only if a supply of hotel amenities is guaranteed.
[I]n determining whether a particular transaction involves a sale of tangible personal property or the transfer of tangible personal property incidental to the performance of a service, a distinction must be made as to the true object of the transaction contract; ....
[Accountants Computer Servs. Inc. v. Kosydar, 35 Ohio St.2d 120, 298 N.E.2d 519, 525 (1973), cited with approval in Metpath, Inc. v. Director, Div. of Taxation, supra, 96 N.J. at 154, 474 A.2d 1065.]
The “true object” of the rental of a hotel room is the use of the room, not the acquisition of a shoeshine cloth, a small bottle of shampoo, a ballpoint pen, or a sewing kit. Under current standards for hotels such as those- operated by plaintiffs, the providing of hotel amenities is part of the overhead, part of the hotelier’s obligation to provide hotel guests with “a level of ‘service, attention, convenience and luxury’ commensurate with the character of the facility ...” Helmsley, supra, 187 A.D.2d at 69, 592 N.Y.S. 2d 851. The transactions between plaintiffs and their hotel guests with respect to hotel amenities are not “resales.” The original purchases of the amenities by the plaintiffs, therefore, do not constitute purchases for resale within the meaning of N.J.S.A. 54:32B-2(e)(1)(A).
The tax imposed on hotel room rents under N.J.S.A. 54:32B-3(d) is not a tax on the sale or resale of hotel amenities, but only on the room rents themselves. As a result, subjecting plaintiffs’ purchases of hotel amenities to sales and use tax liability (i) does not result in the pyramid taxation which the sale for resale exemption was intended to prevent, Metpath, Inc. v. Director, Div. of Taxation, supra, 96 N.J. at 151, 474 A.2d 1065, and (ii) is consistent with the broad and inclusive scope of the Sales and Use Tax Act intended by the Legislature.
I need not consider the Director’s contention that plaintiff Harrah’s tailed to file its refund claim for the period of January 1, 1990 through March 31,1993 on a timely basis.
*96 Judgment will be entered in favor of the Director denying plaintiffs’ claims for refund. Counsel for the Director shall, within ten days, submit an appropriate form of Judgment pursuant to R. 4:42-l(c).

 Court decisions from New York are useful in interpreting the New Jersey Sales and Use Tax Act because the New Jersey Act “was obviously drawn from the corresponding New York Sales and Compensating Use Tax Law." New Jersey Bell Tel. Co. v. Director, Div. of Taxation, 152 N.J.Super. 442, 450, 378 A.2d 38 (App.Div.1977) (Horn, J.A.D., concurring). See also Newman v. Director, Div. of Taxation, 14 N.J.Tax, 313, 320-21 (Tax 1994). The New York decisions, of course, are not binding on New Jersey courts.

 N.J.S.A. 54:32B-2(f) defines "sale, selling or purchase” as follows:
*94 (f) Sale, selling or purchase. Any transfer of title or possession or both, exchange or barter, rental, lease or license to use or consume, conditional or otherwise, in any manner or by any means whatsoever for a consideration, or any agreement therefor, including the rendering of any service, taxable under this act, for a consideration or any agreement therefor.