RIMM, J.T.C.
Plaintiff, Boardwalk Regency Corporation, a New Jersey corporation trading as Caesars Atlantic City (hereinafter “BRC”), seeks a judgment setting aside the final determination of defendant, Director, Division of Taxation (hereinafter “the Director”), that plaintiff owes the State of New Jersey $47,831, plus interest, for sales and use tax over the taxable period from January 1, 1990 through June 30, 1994 in accordance with the New Jersey Sales and Use Tax Act, N.J.S.A. 54:32B-1 to -29, (hereinafter “the Act”).
During this time period, BRC owned and operated a hotel casino and entertainment facility located at 2100 Pacific Avenue in Atlantic City, New Jersey, known as Caesar’s Casino Hotel. BRC’s property included among other things, a casino, a hotel, several restaurants, bars and lounges, as well as a conference center.
The parties have stipulated that, throughout the taxable period, BRC purchased nonalcoholic carbonated beverages from various suppliers and provided these suppliers with sales tax resale certificates, known as ST-3 forms, with respect to all of the purchases. Whenever BRC bought nonalcoholic carbonated beverages from its suppliers, it certified to the suppliers that it was purchasing the products to resell them. Thus, BRC did not pay sales or use tax on these purchases.
The parties have also stipulated that, although a portion of the nonalcoholic carbonated beverages purchased from the suppliers were, in fact, resold by BRC to its patrons in the ordinary course of business, BRC also provided, for no monetary consideration, a portion of those nonalcoholic carbonated beverages to patrons gambling on the casino floor and to its own employees at sched *335 uled breaks during working hours. BRC never paid sales or use tax to the State of New Jersey on these complimentary nonalcoholic carbonated beverages.
On January 10, 1995, following an audit by the Division of Taxation, the Director issued a Notice of Assessment Related to the Final Audit Determination to BRC in the amount of $272,-597.93. This amount included taxes not at issue in this case. The notice identified the taxpayer’s name and identification number, referred to “Case No 26,” and specifically advised BRC that it had a liability for use tax on “purchases” under N.J.S.A. 54:32B-6 and a liability for sales tax on “purchases” under N.J.S.A 54:32B-14(b). The schedule of liabilities attached to the assessment notice clearly noted that the taxes at issue were sales and use taxes.
By letter dated April 5, 1995, BRC, through its authorized representative, filed a written protest and a request for a hearing in response to the Director’s assessment notice. The seven-page document dealt with a number of issues, including the assessed use tax on complimentary nonalcoholic carbonated beverages.
On December 5, 1995, representatives of the Division of Taxation and BRC held a conference, during which they discussed BRC’s protest and the factual and legal bases for the Director’s assessment of tax. On May 3, 1996, the Director issued a final determination letter to BRC. The letter again clearly identified the taxpayer’s name and identification number, and referred to “Case No 26,” the same case number that had appeared on the assessment notice. The final determination letter specifically referenced BRC’s April 5,1995 protest letter and the December 5, 1995 conference between the parties. In the final determination letter, the Director assessed a total of $77,818. The schedule attached to the letter indicated that $47,831 of this total was the tax the Director asserted was due on “carbonated beverages,” $20,761 of the total was the amount of interest owed at that time on the carbonated beverage amount, and the remaining $9,226 was the agreed balance due on unrelated claims involving BRC.
*336 On July 31, 1996, BRC filed a complaint with the Tax Court contesting the Director’s final determination. On October 1,1996, the Director filed an answer disputing plaintiffs claims. After several telephone conferences among the parties and me when the factual and legal bases for the assessment were discussed, the parties submitted a joint partial stipulation of facts on April 30, 1997.
Among other things, the parties further stipulated that, on December 14, 1981, the Director entered into an agreement with BRC in accordance with N.J.S.A. 54:53-1 that provided that “no sales tax would be imposed on the provision of ‘complimentary meals’ and that a use tax would be imposed upon the ‘cost’ of a complimentary meal. Such ‘cost’ would be deemed to equal 25% of the amount that such meals would have been sold for to the public.” The Director did not tax the relevant purchases by BRC from its suppliers at that time. The parties also stipulated that, on May 15, 1986, the Director entered into a second agreement with BRC, in accordance with N.J.S.A. 54:53-1, amending the 1981 agreement and providing that “[n]o sales or use tax will be imposed on the provision of complimentary meals or complimentary liquor effective January 1, 1986.” The parties agreed that the 1986 agreement specifically included nonalcoholic beverages within the definition of the term “complimentary meals.” Finally, the parties stipulated that, on June 15, 1988, the Director and BRC entered into a third agreement amending paragraph three of the 1986 agreement, dealing with coupons, as a result of the Appellate Division decision in Burger King Corp. v. Director, Div. of Taxation, 224 N.J.Super. 628, 541 A.2d 241 (App.Div.1988).
On May 5, 1997, BRC filed a motion for summary judgment arguing that it is not liable for the assessed tax for two reasons. First, BRC claims that “the Division’s failure to identify any legal or factual basis for the Use Tax assessment violates the principles of equity and fairness, the constitutional requirements for due process, and specific requirements of the New Jersey statutes and therefore should be set aside.” Second, BRC claims that the assessment should be set aside because the Director had entered *337 into a “Closing Agreement prohibiting] the Director ... from imposing Use Tax on the provision of’ complimentary nonalcoholic carbonated beverages.
On May 19,1997, the Director filed a cross-motion for summary judgment. In addition to asserting that BRC was afforded proper statutory notice of the assessment and complete due process in this matter, the Director argues that BRC “has misread the express language of the” three agreements entered into by BRC and the Director in 1981, 1986 and 1988. Those agreements, according to the Director, only prohibit the taxation of the complimentary transfer of nonalcoholic carbonated beverages from BRC to its patrons. The Director contends that the assessed tax is on an entirely different transaction, namely BRC’s purchase of the nonalcoholic carbonated beverages from its suppliers, and is consistent with the three agreements and within the taxing authority of the state.
A hearing on the cross-motions for summary judgment was held on June 13, 1997. I found that the Director’s information in the Notice of Assessment and in the final determination letter met the statutory and constitutional notice requirements for the assessment and that BRC’s right to due process had not been violated. I reserved decision on the other issues presented by the motions.
BRC contends that: (1) its 1986 agreement with the Director prohibits the Director’s assessment; and (2) in the absence of any agreement between BRC and the Director, the Director could not tax BRC’s purchase of nonalcoholic carbonated beverages from its suppliers because these purchases constitute “sales-for-resale” which are not taxed under New Jersey law. In order to bolster its “sale-for-resale” argument, BRC argues that it receives consideration for the beverages in the form of an inducement for its patrons to gamble and in the form of services from its employees.
BRC also argues that the state cannot tax its provision of complimentary beverages to its casino patrons or its employees, because BRC receives no monetary compensation for the beverages from the casino patrons, or its employees, upon which a tax can be imposed. As counsel for BRC stated at oral argument on the *338 motions for summary judgment, BRC believes that it should never have to pay any tax to the State of New Jersey on the nonalcoholic carbonated beverages it purchases from suppliers and gives away to patrons at its casino. In other words, BRC argues that there cannot be a tax on its purchases from its suppliers, because such purchases are sales for resale. BRC then argues that the “resale” cannot be taxed because, although it gets consideration, the consideration is not in monetary form.
The Act applies to sales of tangible personal property and to the use, storage or consumption of such property, and imposes “transactional” taxes on sales or service transactions. Under the Act, the receipts from all sales of tangible personal property not specifically exempted from taxation are subject to a six percent sales tax. N.J.S.A. 54:32B-3. The Act imposes a six percent compensating use tax on the use within New Jersey of any tangible personal property purchased at retail for which no New Jersey sales tax has been or will be paid. N.J.S.A 54:32B-6. N.J.S.A 54:32B-8.2 expressly provides that receipts from the sale of carbonated soft drinks and beverages are “subject to the retail sales and compensating use taxes.”
Generally, the sales tax is collected by the vendor of the tangible personal property, who then remits the collected tax to the state. However, the Act also provides that,
[w]here any customer has failed to pay a tax imposed by this act to the person required to collect the same, then in addition to all other rights, obligations and remedies provided, such tax shall be payable by the customer directly to the director and it shall be the duty of the customer to file a return with the director and to pay the tax to him within 20 days of the date the tax was required to be paid.
[NJ.S.A 54:32B-14(b).]
Under the Act, sales tax is due on receipts from the “retail sales” of tangible personal property unless the Act expressly provides otherwise. N.J.S.A 54:32b-3. The Act defines “retail sale” as “[a] sale of tangible personal property to any person for any purpose, other than ... for resale either as such or as converted into or as a component part of a product produced for sale by the purchaser____” N.J.S.A 54:32B-2(e)(l)(A). In other *339 words, if a purchaser of tangible personal property buys the property “for resale,” no sales tax is due on the purchase.
The intent of the Legislature was “to exempt sale-for-resale transactions to avoid tax pyramiding____” Steelcase, Inc. v. Director, Div. of Taxation, 13 N.J.Tax 182, 195 (Tax 1993). “The contemplation was that the tax in such a situation would be incurred on resale.” Metpath, Inc. v. Director, Div. of Taxation, 96 N.J. 147, 151, 474 A.2d 1065 (1984). Thus, the sale-for-resale provision was not intended to extinguish the tax obligation entirely. The Legislature decided that, where purchased property is to be resold, there should be no tax at the time of the initial purchase transaction and tax should be imposed only at the time of the subsequent resale of the property.
The purpose of exempting sales for resale is articulated in Mariner’s Landing, Inc. v. Director Div. of Taxation, 11 N.J.Tax 215 (Tax 1989):
This provision was enacted “to avoid pyramiding taxes as goods move along the channels of distribution toward the market place.” In transactions involving sales of tangible personal property and services, only the final retail sales are subject to tax. The sale for resale provision insures that only final retail sales are taxed.
[Id. at 230 (citations omitted).]
The “pyramiding taxes” concept is a fundamental principle of the Act, that is, to tax items in the line of commerce once, but only once. At oral argument on the cross-motions for summary judgment, BRC stated that it should never have to pay tax to the State on the nonalcoholic carbonated beverages it purchases from suppliers and gives away to patrons and employees at its casino. This argument is rejected. Not taxing the beverages at all would undermine the purpose of the Act.
In a sale-for-resale transaction, the purchaser, pursuant to N.J.A.C. 18:24-10.2, provides the vendor a resale or exemption certificate, or ST-3 form, and the vendor accepts the certificate in lieu of collecting the sales or use tax. The seller is then relieved from any liability for collection or payment of tax on the transaction, N.J.A.C. 18:24-10.3, as long as the seller accepts the certificate in good faith. Thus, if a transaction is identified as a sale for resale, where the purchaser buys with the intent to resell the item *340 to its patrons, that transaction is exempt from sales or use tax, but the items involved are not.
Our courts have looked to the definition of the term “sale” in the Act to interpret the term “resale.” Fairlawn Shopper, Inc. v. Director, Div. of Taxation, 98 N.J. 64, 72, 484 A.2d 659 (1984); Telepages, Inc. v. Baldwin, 9 N.J.Tax 30, 41 n. 8 (Tax 1987). The Act defines the term “sale” as:
Any transfer of title or possession or both, exchange or barter, rental, lease or license to use or consume, conditional or otherwise, in any manner or by any means whatsoever for a consideration, or any agreement therefor, including the rendering ' of any service, taxable under this act, for a consideration or any agreement therefor.
[N.J.S.A 54:32B — 2(f).]
Thus, a purchaser need not pay sales tax at the time of purchase where that purchaser will subsequently transfer the product for “consideration.”
If the purchaser does not resell the items purchased under the sale-for-resale exemption, the exemption no longer applies and the compensating use provision of the Act becomes operative. N.J.S.A 54:32B-6. This tax is deemed “compensating” because transactions not subject to the sales tax, e.g. sale-for resale transactions, may still be taxed under N.J.S.A 54:32B-6. The statute provides:
[u]nless property or services have already been or will be subject to the sales tax under this act, there is hereby imposed on, and there shall be paid by every person a use tax for the use within this State ... except as .otherwise exempted under this act, (A) of any tangible personal property purchased at retail.
[N.J.S.A 54:32B-6.]
The purpose of the compensating use tax provision is to prevent the out-of-state purchase of personal tangible property that is brought into and used in this State from escaping New Jersey State sales tax. See Diamondhead Corp. v. Director, Div. of Taxation, 4 N.J.Tax 255 (1982); Heuer v. Director, Div. of Taxation, 12 N.J.Tax 443 (Tax 1992), aff'd, 14 N.J.Tax 283 (App.Div.1993); Coppa v. Taxation Div. Director, 8 N.J.Tax 236 (Tax 1986). Its applicability, however, has been expanded to operate as a safety net provision, requiring taxpayers to pay a six percent tax on tangible personal property purchased in-state that *341 would not otherwise be subject to the retail sales tax under N.J.S.A. 54:32B-3. See McGraw-Hill, Inc. v. Director, Div of Taxation, 9 N.J.Tax 372, 382 (Tax 1987) (stating that “The use tax is a tax complementary to the sales tax as an aid to its enforcement.” (emphasis added)).
In McGraw-Hill, Inc., supra, the publisher-taxpayer appealed the Director’s assessment that it owed a “deficiency use tax” on the cost of books it subsequently donated to charity. Id. at 375. The publisher argued that the purchases of the component materials were exempt from taxation under the sale for resale provision of the Act. In holding that the donation of books to charity did not constitute a resale for purposes of the Act, Judge Lasser held that the Legislature certainly intended that property purchased with the intention that it will be resold is exempt from sales tax. Id. at 381. He went on to state:
However, when the intent changes and resale is no longer intended, the tangible personal property becomes subject to use tax on withdrawal from storage and devotion to a non-resale use. When there is no resale, the sale for resale exemption disappears, and since no sales tax was paid on the purchase ... the use tax provisions of [N.J.S.A. 54:32-6] come into play, making the use of the property taxable.
[Id. at 381-82.1
Thus, when the intended use of items purchased under the exemption changes to some purpose other than resale, the exemption disappears and the use tax becomes due. To dispel any confusion as to which tax applies under what circumstances, Judge Lasser continued, stating that:
[i]t is important to recognize the difference between the sales tax and the use tax. Sales tax is imposed on a commercial transaction, a purchase for consideration. The use tax is a tax complementary to the sales tax as an aid to its enforcement. It is a tax on possession and enjoyment of that which was purchased and for which no sales tax was paid.
[Id. at 382 (citations omitted).]
In the case at bar, the transaction between the casino and its patrons in no way resembles a sale and thus the purchase of the beverages by plaintiff is subject to the use tax.
Counsel for BRC contends that the provision of the beverages to casino patrons was to induce them to gamble at the casino *342 and that this constituted “consideration” under the Act. While the term “consideration” is not defined in the Act, “it is commonly understood that words in a statute having a well-defined common-law meaning are to be construed in the same sense under the statute when used in connection with the same or similar subject matter with which they were associated at common-law.” L.B.D. Constr., Inc. v. Director, Div. of Taxation, 8 N.J.Tax 338, 346 (Tax 1986) (citing Mascola v. Mascola, 168 N.J.Super. 122, 126, 401 A.2d 1114 (App.Div.1979)).
Consideration is the “inducement to a contract.” Black’s Law Dictionary 277 (5th ed.1979). Consideration
His the price bargained for and paid for a promise.” That consideration must be legally sufficient. The test of legally sufficient consideration is whether what is bargained for and given in exchange for a promise constitutes a benefit to the promisor or a detriment to the promisee. Detriment in the legal sense occurs when a promisee at the request of the promisor has done or promised to do any act he was not already legally bound to do. Similarly, it is a legal benefit to a promisor, if, as a result of a request attached to his promise, he has acquired a right to or an actual performance from the promisee to which he was not otherwise legally entitled.
[L.B.D. Constr., Inc., supra, 8 N.J.Tax at 347 (citations omitted).]
In order for a sale-for-resale exemption to apply to a particular transaction, the purchaser must receive legally sufficient consideration in exchange for the item purchased. In other words, the purchaser may not give away the item.
Counsel for BRC is incorrect when he asserts that the transfer of nonalcoholic carbonated beverages from BRC to casino patrons is a transfer for consideration. There is simply no bargained-for exchange in the transaction. BRC retains sole discretion to determine which patrons it wants to provide with complimentary beverages. A patron who' gambles one million dollars in the casino could be denied a free beverage by the casino and would have no legally enforceable rights against BRC with regard to such beverages. BRC makes no legally binding promise to anyone that they will be provided with complimentary beverages in exchange for gambling in BRC’s casino. Thus, BRC’s transfer of these beverages to its patrons is a transfer for no consideration, or *343 at least for legally insufficient consideration, and does not constitute a “resale” of the beverages under the provisions of the Act.
BRC purchased nonalcoholic carbonated beverages from its vendors giving them sale-for-resale certificates, thus paying no tax on the transactions. Subsequently, BRC provided the beverages to its patrons at no charge, i.e., as complimentary beverages and paid no sales tax on these transactions. With this provision to the patrons, the sale-for-resale exemption disappeared, and BRC became, for tax purposes, the consumer or “end-user” of the nonalcoholic carbonated beverages. Thus, a use tax became due on the beverages BRC purchased under the sale-for-resale certificates. BRC is required to pay a six percent use tax on the purchase price from the supplier for the years in which no tax was paid on carbonated beverages it provided for no consideration.
In his brief in response to the Director’s motion, counsel for BRC relies on a December 19, 1980 letter from the then Director of the Division of Taxation as support for his argument that the transfers of beverages to casino patrons are for consideration and fall under the resale provisions of the Act. This letter states, among other things, that, at the time the letter was written, the Director viewed complimentary meals as
subject to the sales tax inasmuch as these transactions have as consideration an object of gain whether or not evidenced by a “chit.” In order to be subject to tax, it is not necessary that the taxpayer act with a profit motive or actually to make a profit. We find ample consideration in the fact that such complimentary items are furnished for the purpose of inducing attendance at a casino.
Counsel for BRC contends that this letter, written a year before the first agreement between the parties, should bind the Director now on the issue of whether the transfer of beverages by BRC to casino patrons is a resale under the Act. There is no basis in fact or in law for holding the Director to the assertion set forth in the letter. The letter has been taken out of context by BRC in an attempt to avoid its fair share of the burden of taxation.
Notably, the letter indicates that the Director believed a sales tax should be imposed on the provision of complimentary meals to casino patrons. Yet, following this 1980 letter, BRC and the Director signed the 1981 agreement that explicitly imposed no *344 sales tax on the provisions of complimentary meals to casino patrons. Instead, the 1981 agreement provided that a use tax would be imposed on 25% of the amount for which such meals would normally be sold to the public by BRC.
The 1986 agreement changed the taxation of these complimentary meals in that the Director agreed to eliminate the use tax on beverages. As with the 1981 agreement, the 1986 agreement provided that the Director would not impose a sales tax on the provision of complimentary meals. Thus, the statements in the 1980 letter suggesting that sales tax should be paid on the provision of complimentary meals seems to have had no bearing on any of the agreements between the parties. In any event, such statements are wrong.
According to the certification of the Chief of the Tax Services Branch of the Division of Taxation, included with the Director’s motion papers, the Director’s longstanding administrative practice has been to permit certain purchasers of products to submit ST-3 forms to suppliers, “if, at the time of purchase, such purchasers believe that they will resell the majority of their purchases later, but also believe that they may give away a small percentage of their purchases on a complimentary basis as well.” This administrative practice was instituted for the convenience of taxpayers. If, however, a purchaser later does not resell the product, the original tax liability remains.
This tax liability can be viewed either as the original sales tax due on the product that was not resold, or as a use tax compensating for the fact that sales tax was not collected at the time of the initial purchase. Whatever the tax is called, it is clearly due under the provisions of the Act.
The parties have also stipulated that the 1986 agreement between BRC and the Director only prohibits the taxation of the “provision of complimentary meals or complimentary liquor.” (emphasis supplied). Here, the Director is not seeking to impose a tax on the transaction between BRC and its casino patrons. The Director has assessed no tax on the “provision” of the *345 beverages by BRC to the patrons in its casino. The Director seeks to tax the price paid by BRC to its suppliers for the beverages that were subsequently given away to the casino patrons. This discrete transaction is taxable under the provisions of the Act, and such taxation is not prohibited by the terms of the 1986 agreement.
The 1981 agreement says that no sales tax would be imposed on the “provision” of complimentary meals to casino patrons. No sales tax could have been imposed on that transaction because there is no receipt of anything of monetary value in exchange for the complimentary meals and beverages on which a tax could be computed. Cf. Burger King v. Director, Div. of Taxation, 9 N.J.Tax 251 (Tax 1987), aff'd, 224 N.J.Super. 628, 541 A.2d 241 (App.Div.1988). The 1981 agreement, however, provided that a “use tax” would be imposed on 25% of the amount for which such meals were normally sold to the public by BRC. The Director did not tax the initial purchase transaction between BRC and its suppliers during this time period.
The 1986 agreement changed the taxation of these complimentary meals. As with the 1981 agreement, the 1986 agreement provided that the Director would not impose a sales tax on the provision of the complimentary meals. The 1986 agreement, however, differed in that the Director agreed to no longer impose a “use tax” on the provision of the meals. Since the Director did not tax the initial purchases of the beverages from the suppliers during this period, this amended language clearly refers to the “use tax” imposed under the 1981 agreement, amounting to a tax of 6% on 25% of the amount other customers were charged for a meal or beverage. In other words, the 1986 language deals with the subsequent “provision” transaction between BRC and its casino patrons and not with the initial “purchase” transaction between BRC and its suppliers.
The Director’s position in this case is consistent with several administrative pronouncements the Division of Taxation has issued in the past. For example, in the April/May 1974 edition of the New Jersey State Tax News, the Director addressed a case where *346 a New Jersey clothing company gave away a place setting of dishes with every order of clothing over a certain amount. No price was set on the dishes and no tax was collected on their transfer to the customer. The Director required the clothing vendor to pay tax on its purchase of the dishes. In the January/February 1985 edition of the New Jersey State Tax News, the Director dealt with a case where a supermarket, as a promotion to instill confidence in its price-scanner, gave away products to its customers if the price of the products was scanned incorrectly. The Director found that, since a taxable item was given to a customer free of charge, the vendor was liable for the tax, based on the vendor’s purchase price of the item.
These administrative pronouncements indicate that the Director was not releasing BRC from tax liability on its purchases of nonalcoholic carbonated beverages from its suppliers. Even if the Director intended to release BRC from such liability, such a determination would amount to the Director’s exceeding the powers granted by the Legislature and would be void.
Further, the Legislature’s grant of authority to the Director specifically refers to “a written agreement ... relating to the liability of such person ... in respect of any State tax for any taxable period ending prior or subsequent to the date of such agreement.” N.J.S.A. 54:53-1 (emphasis added). The statute only authorizes the Director to enter into agreements regarding tax liability with a definite ending period. Thus, the Director is not authorized to enter into an agreement which would govern the future tax liability of a taxpayer for an indeterminate period of time. BRC asks me to construe the agreements between BRC and the Director as providing that the Director may never tax BRC on its purchases of complimentary nonalcoholic carbonated beverages provided to its customers and its employees. Such construction would allow the Director unfettered discretion in applying the tax laws, something the Legislature never contemplated.
*347 The Legislature authorized the Director to enter into agreements with taxpayers by enacting N.J.S.A 54:53-1. The provision specifically limits this power to cases in which “there appears to be an advantage in having the case permanently and conclusively closed, or if ... it is determined by the Director that the State will sustain no disadvantage through consummation of such an agreement.” N.J.SA 54:53-1. It has long been recognized that “[p]arties in New Jersey are ... presumed to have contracted with reference to the existing law.” Silverstein v. Keane, 19 N.J. 1, 13, 115 A.2d 1 (1955) (citations omitted). Thus, the Director could not have intended to include the “purchase” of nonalcoholic carbonated beverages within the phrase “provision of’ in the agreement. Such inclusion would effectively eliminate the tax liability of BRC in regard to nonalcoholic beverages. Under no circumstances would such an agreement be interpreted as advantageous to the State. Foregoing the collection of taxes on a series of substantial taxable transactions can in no way be interpreted as advantageous. The plain meaning of the word “provision” in the context of the agreements is simply the giving of complimentary meals to the casino’s patrons, and not the purchase of beverages from suppliers to the casino. The Director did not, and could not, have entered into an agreement forgiving the taxes owed in this case.
At oral argument, counsel for BRC emphasized that the treatment the Director gave to the sale of cellular phones in the Winter 1993 edition of the New Jersey State Tax News should be the tax treatment in this matter. In that case, a telephone was sold by a phone salesman to a consumer for $99.99, but the cost of the phone to the seller was $200. The Director found that the sales tax should be imposed on the $99.99 sales price rather than the $200 price. What counsel for BRC neglected to point out at oral argument was that, in the Winter 1995 edition of the New Jersey State Tax News, the Director reversed the prior position of the Division of Taxation, concluding that, where a retailer sells a cellular phone for a nominal amount in exchange for the purchaser’s agreement to use a particular cellular service provider, the retailer must remit New Jersey use tax based on its cost of *348 purchasing the telephone minus the amount of the nominal charge paid by the customer. Additionally, the Director found that the retailer must collect sales tax on the nominal amount paid by the customer.
Analogous eases in New Jersey and in other jurisdictions support the imposition of the tax sought by the Director in this case. First, publishers of printed material which are subsequently distributed to patrons free of charge are required to pay a use tax for materials purchased under a sale for resale exemption which exemption disappears when there is no retail sale to an end-user. See Princeton Community, Phone Book, Inc. v. Director, Div. of Taxation, 145 N.J.Super. 589, 592, 368 A.2d 933 (App.Div.1976) (holding that where the product purchased by the taxpayer was used in the production of an advertising book distributed to area residents for free, “[t]hat book is not produced for resale and therefore is not exempt from the tax under N.J.S.A 54:32B-2(e)(1)(A)”) certif. denied 73 N.J. 66, 372 A.2d 331 (1977); McGraw-Hill, Inc. v. Director, Div. of Taxation, supra 9 N.J.Tax 372 (holding that books produced by publisher using products purchased as sale for resale were not subject to use tax under the Act until the publisher “took steps to use the books for gift purposes” and that once the taxpayer distributed the printed materials free of charge, “they were removed from the protection of § 2(e) and became subject to the use tax under § 6”).
Second, courts in Wisconsin have addressed the issue of whether items purchased for resale subsequently giveii away to patrons are subject to the sales and use tax. In Security Sav. and Loan Ass’n v. Wisconsin Dep’t. Of Revenue, 125 Wis.2d 573, 373 N.W. 2d 86 (Wis.Ct.App. (Unpublished opinion, Docket No. 84-1615), review denied, 126 Wis.2d 519, 378 N.W.2d 292 (1985)), plaintiff, Security Savings and Loan Association acquired premiums to give away as promotional items to attract new depositors. It never paid sales or use tax on the acquisition of these premiums as sales-for-resale, nor did it pay sales tax upon resale because the premiums were given away. The Wisconsin Court of Appeals held that a “person who acquires the property to give it away is a user *349 or consumer rather than a reseller, and is liable for the use tax.” Id. at 573, 373 lV.W.2d 86 (citing Wisconsin Dep’t. Of Revenue v. Milwaukee Brewers Baseball Club, 108 Wis.2d 553, 322 N.W.2d 528 (App.1982), aff'd, 111 Wis.2d 571, 331 N.W.2d 383 (1983)).-The Court of Appeals further held that premiums purchased by a savings and loan, and given away to customers were subject to use tax under the applicable state sales and use tax provision. In addition, the court clearly stated that the “acquisition of promotional items which are not for resale is a taxable event.” Ibid. (emphasis added). In Wisconsin Dep’t. of Revenue v. Milwaukee Brewers Baseball Club, supra, that same court held that promotional items purchased by a baseball team for free distribution to fans attending the park were subject to a use tax to be paid by the baseball team. Milwaukee Brewers, supra, 108 Wis.2d at 558, 322 N.W.2d 528 (requiring the Brewers to pay use tax on promotional items given away to patrons because there is no resale, but the items were used as a way to “enhance the attractiveness of its home games to fans”).
A third line of cases relates to the complimentary provision of meals and beverages on airlines. Pennsylvania, Virginia, Indiana, Illinois and Florida have all held that meals are provisions not exempt from sales and use tax because no resale occurs within the meaning of the sale for resale exemption provided in each state’s sales and use tax act. See American Airlines, Inc. v. Dep’t of Revenue, 58 Ill.2d 251, 319 N.E.2d 28 (1974) (holding that there was a sale at retail by the airline meal preparers to the airline and thus, the airline, as consumer, owed sales tax.); Commonwealth v. United Airlines, Inc., 219 Va. 374, 248 S.E.2d 124, 130 (1978) (holding that “the service of food and related items by United to its passengers was not a resale ... and that United was not exempt from the payment of taxes on that ground”); Air Jamaica, Ltd. v. State Dep’t. of Revenue, 374 So.2d 575 (Fla.Dist.Ct.App. 1979) (indicating that, even though the cost of the ticket included the price of the meal, subdividing the ticket price to cover the various services included in the transportation, in order to reach the “artificial conclusion” that a sale occurred, is “to strain the meaning of the term ‘resale’ ”), cert. denied, 392 So.2d 1371 (Fla.1980); USAir, Inc. v. Indiana Dep’t. of State Revenue, 542 *350 N.E.2d 1033 (Tax Ct.Ind.1989) (following Air Jamaica, supra, in holding that no resale occurred within the contemplated meaning of the statute), aff'd, 582 N.E.2d 777 (Ind.1991); American Airlines, Inc., et al. v. Commonwealth, 542 Pa. 1, 665 A.2d 417, 420-21 (1995) (stating that “[flood, beverages and related non-food items are provided as part of the service of air transportation solely for the convenience of passengers and the cost is simply built into the price of the ticket, therefore, the use of such items by [the airlines] are not excluded from taxation as a ‘resale’ ”). In each case, the airline was required to pay tax on the purchase of meals to be provided to its passengers on the flights.
Other jurisdictions allow the sale for resale exemption in regard to meals provided by airlines. See Undercofler v. Eastern Air Lines, Inc., 221 Ga. 824, 147 S.E.2d 436 (1966) (holding that the sale of meals to the airline, to be resold to passengers buying tickets on the airline, was not a taxable event for purposes of sales and use tax; however, the transaction from the airline to the passenger was a taxable event); State v. Hertz Skycenter, Inc., 55 Ala.App. 481, 317 So.2d 319 (1975) (holding that the sale of meals to the airline was a wholesale sale and thus not subject to retail sales tax). The rationale for allowing the exemption is that the price of the meal is included in the sale price of the ticket. Undercofler, supra, 147 S.E.2d at 443. This rationale does not reflect the better reasoning and is inapplicable under the facts in the case at bar. Even if I were to accept such rationale, I would not apply it in the context of a casino patron receiving beverages without charge, because there is no admission charge for casino entrance to which a charge for the beverage could be attached. Entrance to the casino is free.
Finally, sale-for-resale exemptions in the context of hotels providing certain amenities to its customers free of charge were recently addressed in the State of New Jersey. In Adamar of N.J. v. Director, Div. of Taxation, 17 N.J.Tax 80 (Tax 1997), the plaintiffs, casino hotels, had filed an appeal with the Director in response to the Division’s assessment of sales and use tax on the provision of hotel amenities purchased under sale-for-resale certif *351 ieates to be resold either “as such” or “as a component part of a product [ (hotel rooms) ] produced for sale by [plaintiffs].” Id. at 82. Judge Kuskin, recognizing this as a case of first impression in New Jersey, relied on a case decided by the Supreme Court of New York, Appellate Division, Helmsley Enterprises, Inc. v. Tax Appeals Tribunal of the State of New York, 187 A.D.2d 64, 592 N.Y.S.2d 851 (App.Div.), leave to appeal denied, 81 N.Y.2d 710, 600 N.Y.S.2d 197, 616 N.E.2d 854 (1993). In that case, the New York court held that hotel amenities, in addition to other items provided by the hotel, were “inseparably connected” to the service provided by an innkeeper, indicating that it was an expense encountered as a part of doing business as a hotel. Helmsley, 187 A.D.2d at 69, 592 N.Y.S.2d 851. In essence, the hotel consumed these amenities in the regular course of business and, thus, was required to pay sales tax on these items as the ultimate consumer.
Guided by the Helmsley decision, Judge Kuskin held that such amenities were “ ‘more akin to items of overhead, enhancing the comfort of ... patrons,’ ” and thus subject to New Jersey sales tax. Adamar, supra, 17 N.J.Tax at 89 (citing Helmsley, supra, 187 A.D.2d at 69, 592 N.Y.S.2d 851). See also Adamar, supra, at 89-91 (citing numerous cases from other jurisdictions). In the present case, holding that the provision of complimentary nonalcoholic beverages by casinos to its patrons is not a resale as contemplated by N.J.S.A. 54:32B-2(e)(l)(A) is consistent with the Tax Court’s treatment of sales tax in the comparable context of hotel amenities.
BRC has also argued that, because the Director did not tax the initial purchase of the beverages by BRC from its suppliers during the tax years before the taxable period at issue in this case, the Director should be estopped from assessing a tax now for the taxable period at issue in this case. As counsel for BRC asserted in his brief in response to the Director’s motion for summary judgment:
If at the time the [1986J Closing Agreement was consummated the Division intended to assess a sales tax on BRC’s purchases of nonalcoholic beverages, because BRC was not going to be taxed on the provision of the nonalcoholic beverages under the Closing Agreements, the Division should have told BRC of its *352 intent. Instead, the Division seemingly lulled BRC into a false sense of security, and did not assess the tax until years later. The Division’s delayed actions resulted in irreparable harm to BRC. If the Division had notified BRC of its intention BRC could have changed its operations and charged its patrons cash consideration for the nonalcoholic beverages.
“Estoppel has not barred the imposition of a tax where a taxing authority has by inaction failed to impose a tax in prior years or on a prior transaction.” Black Whale, Inc. v. Director, Div. of Taxation, 15 N.J.Tax 338, 355 (Tax 1995); see also Airwork Serv. Div. v. Director, Div. of Taxation, 97 N.J. 290, 296-99, 478 A.2d 729 (1984), cert. denied, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985) (stating that: “The strong public and governmental interest in the collection of the tax imposed by the Legislature will usually outweigh the asserted reliance by a taxpayer, especially when such reliance is claimed to be based on unofficial statements and equivocal administrative inaction.”) Id. at 299, 478 A.2d 729. “In practice, taxing authorities in New Jersey have never been estopped, either by their spoken words, their written words, or their actions, from imposing a tax.” Black Whale, supra, 15 N.J.Tax at 355. Under longstanding New Jersey precedent, plaintiffs estoppel argument is rejected.
Moreover, contrary to the assertions of BRC’s counsel, the element of detrimental reliance, necessary for equitable estoppel to be applied, is not present in this matter. If anything, BRC has received a substantial benefit from the Director’s inaction between 1986 and 1990. BRC paid no tax at all on the complimentary beverages during that time period and the statute of limitations now bars any attempt by the Director to assess such a tax.
Counsel for BRC’s argument that BRC would have charged monetary consideration for the beverages and collected sales tax is at best, speculative, and at worst, completely unbelievable. It seems highly unlikely that BRC, already absorbing a far greater sum in order to give away these beverages, than the amount at issue here, would have completely abandoned its giveaway program over the amount at issue in this case.
Counsel for BRC has also suggested that all BRC would have to do in order to avoid the tax on the purchase of the beverages from *353 the suppliers at issue would be to charge a nominal amount to the casino patrons for the provision of drinks. Presumably, counsel for BRC believes that only this nominal amount would be taxable. It seems highly unlikely that the Director would permit such a sham. In fact, as discussed earlier, in the Winter 1995 edition of the New Jersey State Tax News, the Director determined that, where a retailer sells a cellular phone for a nominal amount in exchange for the purchaser’s agreement to use a particular cellular service provider, the retailer must remit New Jersey use tax based on its cost of purchasing the telephone minus the amount of the nominal charge paid by the customer. Additionally, the Director found that the retailer must collect sales tax on the nominal amount paid by the customer. Thus, if BRC did charge its patrons five cents for the beverage, the Director would likely assess sales tax on the five cents, and use tax based on the cost of the purchase of the beverage minus the sales tax collected on the five-cent charge.
BRC’s motion for summary judgment is denied. The Director’s final determination is upheld, and his cross-motion for summary judgment is granted. The purchase of nonalcoholic carbonated beverages does not constitute a sale-for-resale when the beverages are subsequently given to patrons on a complimentary basis. A casino patron’s gambling is not legally sufficient consideration for providing complimentary beverages in order to constitute a resale for purposes of N.J.S.A. 54:32B-2(e)(l)(A). The Director of the Division of Taxation is precluded from entering into closing agreements that are disadvantageous to the State, such as the complete release from tax liability on the purchase of beverages from suppliers by the casino. Finally, under New Jersey law, the Director is not estopped from imposing a tax previously not imposed.
The complaint is dismissed.