STERN, P.J.A.D.
Plaintiff taxpayer, Boardwalk Regency Corporation (BRC), appeals from a judgment of the Tax Court which dismissed its complaint seeking to vacate an assessment imposed by defendant Director of the Division of Taxation. The background is fully detailed in the Tax Court’s published opinion, Boardwalk Regency v. Director, Div. of Tax., 17 N.J.Tax 331 (Tax 1998), and need not be restated.
We are in total agreement with the Tax Court judge, substantially for the reasons he stated, that the complimentary providing of non-alcoholic beverages to casino patrons and employees “is a transfer for no consideration, or at least for legally •insufficient consideration, and does not constitute a ‘resale’ of the beverages.” Id. at 342-43. Accordingly, we also agree that “[w]ith this provision to the patrons, the sale-for-resale exemption disappeared, and BRC became, for tax purposes, the consumer or ‘end-user’ of the nonalcoholic carbonated beverages” and, thus, that “a use tax became due on the beverages BRC purchased under the sale-for-resale certificates.” Id. at 343.[1]
*331 We part company with the trial judge only with respect to the power of the Director to compromise a tax dispute and its impact in this case. Before the trial judge the parties stipulated:
8. On December 14, 1981, the Division entered into an Agreement in accordance with N.J.S.A. 54:53-1 (the “1981 Agreement”) with BRC, which provided, inter alia, that no sales tax would be imposed on the provision of “complimentary meals” and that a use tax would be imposed upon the “cost" of a complimentary meal. Such “cost” would be deemed to equal 25# of the amount that such meals would have been sold for to the public. A copy of the 1981 Agreement is attached as Joint Exhibit 2.
9. On May 15,1986, the Division entered into an Agreement, in accordance with N.J.S.A. 54:53-1 (the “1986' Agreement”), with BRC, which amended the 1981 Agreement and provided that “Ln]o sales or use tax will be imposed in the provision of complimentary meals or complimentary liquor effective January 1, 1986.” The 1986 Agreement specifically provided that “Complimentary Meals” means “any transaction where the patron is not required to pay any cash consideration for any portion of the price (including any possible sales tax) of food or (non-alcoholic) beverage.” A copy of the 1986 Agreement is attached as Joint Exhibit 3.
10. On June 15, 1988, paragraph 3 of the 1986 Agreement was amended (with the 1986 Agreement, as amended, referred to as the “1988 Agreement”). Copies of the revised paragraph 3 and the related transmittal letter are attached as Joint Exhibit 4.
11. When the 1981 Agreement, the 1986 Agreement and the 1988 Agreement were entered into, and during the taxable period, under the Sales and Use Tax Act, N.J.S.A. 54:32B-1 et seq., in accordance with the Division's long standing administrative position, purchasers such as BRC could provide Resale Certificates to their Suppliers for the purchase of all non-alcoholic carbonated beverages, provided that non-alcoholic carbonated beverages would be resold in the ordinary course of their businesses.
Although not quoted in the stipulation, it is undisputed that paragraph 3 of the 1986 agreement provided:
With respect to issuance of coupons to be used by bus patrons or others which are utilized to satisfy a portion of retail price of the meals consumed by such patrons, sales tax will be imposed upon the full value of said meals pursuant to N.J.S.A. 54.32B-2(e); and said sales tax shall be collected from the patrons and remitted pursuant to N.J.S.A. 54:82B-12, -14, -17 and -18. For purposes of the amended agreement the term 'coupon’ shall mean any coupon, token or other emolument which entitles the holder to a discount or credit on the purchase price of meals or (non-alcoholic) beverage but shall not include coupons or other documents which are accepted in total satisfaction of the purchase price (including any possible sales tax) of such meals or beverages as described in paragraph 2 . . Lquoted above in paragraph 9 of the stipulation].
*332 That paragraph was amended by the 1988 revision, referred to in paragraph 10 of the stipulation. It provides:
With respect to issuance of coupons to be used by bus patrons or others, sales tax will be imposed upon the price charged for a meal, including nonalcoholic beverages, less the face value of the coupon pursuant to N.J.S.A. 54:32B-3(c); and said sales tax shall be collected from the patrons and remitted pursuant to N.J.S.A. 54:32B-12, -14, -17 and -18. For purposes of this amended agreement the term ‘coupon’ shall mean any coupon, token or other emolument which entitles the holder to a discount or credit on the purchase price of meals or nonalcoholic beverage for which the casino receives no reimbursement.
Hence, as part of the agreements, plaintiff agreed to pay the disputed tax on the partially “comped” meals and beverages.
N.J.S.A. 54:53-1 provides that the Director is authorized to
enter into a written agreement with any person relating to the liability of such person, or of the person or estate for whom he acts, in respect of any state tax for any taxable period ending prior or subsequent to the date of such agreement. A closing agreement may be entered into in any case in which there appears to be an advantage in having the case permanently and conclusively closed, or if good and sufficient reasons are shown by the taxpayer for desiring a closing agreement and it is determined by the director that the State will sustain no disadvantage through consummation of such an agreement.
[N.J.S.A. 54:53-1.]
The statute was part of “[a]n act to establish the authority of the Director of the Division of Taxation to enter into closing agreements and compromises with taxpayers within certain limitations .” See L. 1975, c. 387, N.J.S.A. 54:53-1 to -15, as amended by subsequent legislation.
We read N.J.S.A. 54:53-1 literally and find no basis for voiding the agreements because they were not limited in time or “would govern the future tax liability of a taxpayer for an indeterminate period of time.” Boardivallc Regency, supra, 17 N.J. Tax at 346. The agreements were authorized because they concerned a “taxable period ending ... subsequent to the date of such agreement.” N.J.S.A. 54:53-1; see also N.J.S.A. 54:53-3(b).[2]
*333 The judge, however, concluded that the agreements in question “could not have [been] intended to include the ‘purchase’ of nonalcoholic carbonated beverages” because it “would [have] effectively eliminatefd] the tax liability of BRC in regard to nonalcoholic beverages” and, therefore, would not have been authorized as “advantageous to the. State” within the meaning of N.J.S.A. 54:53-1. Boardwalk Regency, supra, 17 N.J. Tax at 347. We disagree. The Director has broad discretion, and if the agreements were designed to settle a dispute concerning the taxability of transactions including those now in dispute, the administrative action must be deemed presumptively valid. See Public Serv. Elec. and Gas Co. v. New Jersey Dept. of Environ. Protection, 101 N.J. 95, 103, 501 A.2d 125 (1985); Gloucester Cty. Welfare Bd. v. State, 93 N.J. 384, 397-99, 461 A.2d 575 (1983).
Here, the 1986 and 1988 agreements abandoned an effort to collect taxes for fully complimentary meals in exchange for an agreement by the plaintiff to collect and pay the sales tax for partially “comped” meals and beverages. The record includes a memorandum from the Division’s Audit Supervisor to the Director indicating that “the state will benefit” from the 1986 agreement “because of the increased use of coupons” and a memo from the Assistant Chief Tax Counselor recommending that the State “enter into an agreement with the casinos which binds them to collect and remit the sales tax on the coupon sales and, as the quid pro quo, eliminate the use tax on the complimentary meals altogether.” Hence, if the Director felt that an agreement, as opposed to litigation, would be “advantageous to the State,” his decision to compromise an unsettled issue of tax law would not be arbitrary, capricious or unreasonable. See Henry v. Rahway State Prison, 81 N.J. 571, 579-80, 410 A.2d 686 (1980).
Settlement of disputes has as much priority in this tax setting as in others. Thus “courts will strain to give effect to the terms of a settlement whenever possible,” even when an administrative agency is involved. Department of Public Advocate v. New Jersey Bd. of Pub. Util., 206 N.J.Super. 523, 528, 503 A.2d 331 (App.Div.1985); see also Pascarella v. Bruck, 190 N.J.Super. 118, *334 125, 462 A.2d 186 (App.Div.), certif. denied, 94 N.J. 600, 468 A.2d 233 (1983).
“The use tax is a tax complimentary to the sales tax as an aid to its enforcement. It is a tax on possession and enjoyment of that which was purchased and for which no sales tax was paid.” McGraw-Hill v. Div. of Taxation, 9 N.J.Tax 372, 382 (Tax 1987); see also, e.g., Heuer v. Director, Div. of Taxation, 12 N.J.Tax 443, 447 (Tax 1992), aff’d, 14 N.J.Tax 283 (App.Div.1993). Thus, BRC states that there could not be both a sales tax and use tax imposed on the purchase and use of the same beverages. Hence, it contends that “[wjhen the Division agreed not to collect the compensating tax (i.e., the use tax) it necessarily agreed not to collect the tax for which it compensated (i.e., the sales tax on the purchase).” It further argues, “the Division agreed to the casinos’ proposal that (a) they pay the-sales tax on the retail value of the partially comped items, provided (b) the Division agree to not impose a use tax on the fully comped items.”
We agree that, there cannot be both a sales tax on the purchase and a use tax on the enjoyment upon abandonment of the intention to sell an item bought for purposes of resale, and that an agreement as to one had to constitute a settlement of the taxability of both the purchase and use of the item. In other words, because of the interrelationship between the purchase and' use of the same item, a settlement as to the sales tax must resolve any claim regarding the use tax with respect to that item, and vice-versa.
However, the judge agreed with the Director that the purchase of the beverages was a “discrete” taxable event distinct from the “provision” of complimentary drinks to patrons and employees, and that the agreements related only to the latter. Boardwalk Regency, supra, 17 N.J.Tax at 337, 344-45. See also Trump Plaza Associates v. Director, Div. of Taxation, 17 N.J.Tax 327 (Tax 1998). Under that theory, the agreement to tax only the use of partially complimentary beverages does not constitute an agree *335 ment not to impose a sales tax on the purchase of beverages ultimately distributed on a fully complimentary basis.
We believe there is a factual dispute relating to the scope of the agreements which precludes summary judgment. The dispute concerns precisely what the 1981, 1986 and 1988 agreements were designed to address and whether the agreements were designed to include the purchase of all nonalcoholic beverages as well as their service on a complimentary basis to BRC’s patrons, independent of a meal, and to BRC’s employees at all. While both parties sought summary judgment, a factual dispute remains as to whether the parties intended to resolve this subject within the meaning of the agreements.
In summary, we agree with the trial judge that there was no “sale” of the fully “comped” nonalcoholic beverages and, therefore, that a use tax was payable because they were not resold. However, we reject the judge’s conclusion "that a “settlement” of the disputed tax liability could not have been perfected under N.J.S.A. 54:53-1 as a matter of law. Accordingly, we reverse the grant of summary judgment to the Director and remand for resolution of the factual dispute regarding what was settled by the agreements.
The judgment is reversed, and the matter is remanded for farther proceedings consistent with this opinion.

 The judge also said "[tjhis tax liability can be viewed either as the original sales tax due on the product that was not resold, or as a use lax compensating for the fact that sales tax was not collected at the time of the initial purchase. Whatever the tax is called, it is clearly due under the provisions of the Act. Id. at 344. We also note that Adamar of N.J. v. Director, Division of Taxation, 17 N.J. Tax 80 (Tax 1997), discussed by the trial judge in this case, see Boardwalk Regency, supra, 17 N.J. Tax at 350-51, has been affirmed for the reasons stated in *331 Judge Kuskin's opinion. See Adamar of N J. v. Director, Division of Taxation, 18 N.J Tax 70 (App.Div.1999).

 The 1986 agreement permitted termination “by either party upon the giving of six months •written notice and such termination shall apply to periods subsequent to the six month termination notice."