246 N.J. Super. 473 (1990)
587 A.2d 1330
FRANCIS JOSEPH REGAN, PLAINTIFF,
v.
VIRGINIA KATE REGAN, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Essex County.
Decided December 11, 1990.
*475 Sherri L. Davis for plaintiff (Bendit, Weinstock & Sharbaugh, attorneys).
Donald F. Miller for defendant.
FUENTES, J.S.C.
In this matter, a consent judgment of divorce obligated the wife to convey her interest in the marital premises to the husband. In the event of sale, the children of the marriage were to receive a share of the net proceeds. The husband remarried and subsequently died intestate without having sold the property. He is survived by his second wife and his children. The question arising from his death is whether the consent judgment of divorce preserved a survivorship interest in the marital home for the children or whether that interest is now limited to an intestate share.
These are the essential facts. Virginia and Francis Regan were married in 1967. They purchased a home in Bloomfield in *476 1973 and lived there until their divorce in 1981. Three children were born of the marriage, Michael, 23, Suzanne, 22 and Jennifer, 17. Pursuant to the divorce decree, Virginia Regan conveyed her interest in the marital premises to her husband. The conveyance was subject to the condition that, in the event Francis Regan sold the property, the three children were to share equally in half of the net proceeds. In 1982, Francis Regan and Marie Regan were married. No children were born of this marriage. The property was not sold during Francis Regan's lifetime and he died in 1988 without a will. After Francis Regan's death, his surviving spouse qualified as administratrix of the estate. In December 1989, she commenced an action in the Chancery Division for partition. While that case was pending, and with the consent of all the parties, the property was sold and the proceeds deposited with the Clerk of the Superior Court.
Marie Regan now brings a post-judgment motion seeking a clarification of the divorce judgment and an order declaring the entire premises subject to the laws of intestate succession in accordance with N.J.S.A. 3B:5-3d. Under intestate succession, she would be entitled to one-half of the proceeds on deposit, while the other half would be divided equally among the children. The children object to this method of distribution claiming they are entitled to half of the property's value pursuant to their parents' divorce judgment. They also claim they are entitled to half of the remainder based upon intestate succession. Under the children's formula, they receive 75% while Marie Regan gets 25%. There are no cases in this State involving a similar fact pattern. Based on the facts and circumstances of this case, I am persuaded that the children no longer have an interest in the marital premises under the divorce decree and their interest is therefore limited to the amount to which they are entitled under the laws of intestate succession.
The relevant provision of the judgment of divorce provides that:

*477 ... defendant shall transfer to plaintiff all of her right, title and interest in and to premises commonly known as 34 Elmwood Avenue, Bloomfield, Essex County New Jersey which heretofore had been in the name of plaintiff and defendant as tenants by the entirety which transfer shall include defendant's dower interest therein which she does hereby release and relinquish in accordance with the statute in such case made and provided. Plaintiff shall be the sole and exclusive owner of said premises and shall have the right to mortgage, transfer, encumber or convey said premises and deal with same as if it were his sole and exclusive property. Provided, however, that in the event of the sale of said premises one half of the consideration therefor shall be placed in a fund by plaintiff for the benefit of the children and divided equally amongst the children, each child to receive said child's share at time of majority. There shall no restriction upon the plaintiff or compulsion to sell said premises at any time and he may keep it for the remainder of his life or sell it at any sooner date and only upon the sale of said premises when in the sole discretion of plaintiff it shall be deemed proper or appropriate shall one-half of said proceeds be divided amongst the children and if they have already at that time obtained the age of majority it will immediately be distributed rather than held into a fund for them. [Emphasis supplied.]
Marie Regan's basic argument is that, since the property was not sold during Francis Regan's lifetime, the children no longer had an interest in the property after their father's death. Virginia Regan and the children argue that, although the marital premises were not sold, her intent at the time of the divorce was to guarantee the children a 50% interest. It is undisputed that the property in question was the principal marital dwelling and subject to equitable distribution. Thus, Virginia Regan would have been entitled to a share of the marital residence at the time of divorce. However, she chose to give that share to the children. To support their contention, the children argue that under the divorce decree, Mr. Regan had the right to mortgage, transfer, encumber or convey the premises "as if it were his sole and exclusive property." Emphasis supplied. It is suggested that the phrase "as if" means that the property was not Francis Regan's sole property, rather the conveyance was subject to the children's 50% interest.
Preliminarily, it should be observed that while a consent judgment has the characteristics of both a contract and a judgment, it is not strictly a judicial decree. Stonehurst at Freehold v. Freehold Tp. 139 N.J. Super. 311, 313, 353 A.2d 560 *478 (Law Div. 1976). Rather, a consent judgment represents an agreement of the parties "which receives the sanction of the court and it constitutes a contract between the parties to the agreement [which] operates as an adjudication between them." Black's Law Dictionary (6 ed. 1990) at 842; First National State Bank v. Gray, 232 N.J. Super. 368, 372, 556 A.2d 1334 (Law Div. 1989). As such, a consent judgment is subject to many of the rules relating to the interpretation and enforcement of contracts as well as those governing the form, entry and effect of judgments.
One basic rule of interpretation requires the court to evaluate the common intention of the parties to a contract. The court does this by considering the relations of the parties, the attendant circumstances and the purposes they were trying to achieve. Tessmar v. Grosner, 23 N.J. 193, 201, 128 A.2d 467 (1957). The court's function is to assess what was written in the context of the circumstances under which it was written, and accord to the language a rational meaning in keeping with the express general purpose. Owens v. Press Publishing Co., 20 N.J. 537, 543, 120 A.2d 442 (1956); Joseph Hilton & Associates, Inc. v. Evans, 201 N.J. Super. 156, 171, 492 A.2d 1062 (App.Div. 1985). Where a party's intention is doubtful or obscure, the most fair and reasonable construction, imposing the least hardship on either of the parties should be adopted so that neither will have an unreasonable advantage over the other. Talcott v. H. Corenzwit and Co., 76 N.J. 305, 313, 387 A.2d 350 (1978); Tessmar v. Grosner, supra, 23 N.J. at 201, 128 A.2d 467. Additionally, the conduct of the parties after execution of the agreement may be relevant in determining its meaning. Journeymen Barbers, etc., Local 687 v. Pollino, 22 N.J. 389, 395, 126 A.2d 194 (1956); Joseph Hilton & Associates, Inc. v. Evans, supra, 201 N.J. Super. at 171, 492 A.2d 1062.
In construing the relevant provision of the consent judgment in this case, the court must look to the entire consent agreement to determine what Francis and Virginia Regan intended *479 at the time of their divorce. Hudson Co. Newspaper Guild v. Jersey Publishing, Co., 23 N.J. Super. 419, 426, 93 A.2d 183 (App.Div. 1952); Josefowicz v. Porter, 32 N.J. Super. 585, 590, 108 A.2d 865 (App.Div. 1954); In re Baby M, 217 N.J. Super. 313, 380, 525 A.2d 1128 (Ch.Div. 1987), mod. on other grounds 109 N.J. 396, 537 A.2d 1227 (1988). Under the agreement, Francis Regan received the premises as the "sole and exclusive owner." The same document permits him to exercise certain rights "as if" it were his sole and exclusive property. According to the children, the phrase "as if" means the premises were conveyed subject to a condition. That condition involved their half interest. In her certification, Virginia Regan states that it was her intent at the time of the divorce to set aside 50% of the property's value for the children. Otherwise, she says, she never would have relinquished her interest.
Upon a review of the entire agreement I am persuaded that, although the children could have shared in the proceeds of the home had it been sold during their father's lifetime, that interest did not survive his death. Clearly, Virginia Regan gave Francis Regan the right to mortgage or encumber the property in any manner and for any amount he saw fit. Mr. Regan could well have encumbered the property through loans or liens in amounts close to or equaling the home's market value. In that case, the children would have received little or no benefit at all upon a sale.
Consequently, it appears unlikely that Virginia Regan intended to preserve a specified, unrestricted interest in the property for the children. Had she sought to preserve such a right she certainly would have limited Francis Regan's right to encumber the premises. Alternatively, she could have provided for a vesting of the children's interest by requiring a sale of the property upon her husband's death or remarriage. Her stated intention is even less credible in light of the language in the document. There, it appears that the parties contemplated that Francis Regan might never sell the home:

*480 There shall [sic] no restriction upon the plaintiff or compulsion to sell said premises at any time and he may keep it for the remainder of his life or sell it at any sooner date. [Emphasis supplied.]
Thus, the transfer made by Virginia Regan included the possibility that the house might only have been sold after Francis Regan's death. In this instance, the judgment certainly could have included a provision giving the children a portion of the proceeds upon a sale occurring after death. Failure to include such a provision is proof that Virginia Regan was not primarily concerned with preserving a future interest for the children. The provision in the agreement conveying the premises for life with no restriction or compulsion to sell is additional evidence that the parties did not intend to establish a specific interest.
Rather than insuring the children an interest in the home, the more reasonable interpretation of the judgment is that the conveyance was in exchange for a release of Virginia Regan's obligation to pay child support. Following the divorce, the children remained in their father's custody and resided with him in the marital premises until his death.
The agreement specifically addressed child support by stating that the "wife shall not be required to provide such support for said children in consideration of her having transferred her interest in the real estate to plaintiff...." This provision is further evidence that Virginia Regan clearly did not intend to preserve her interest in the real estate for the children. Rather, she sought to relinquish her equitable interest in the real estate in exchange for a release from her obligation to pay child support. Upon a thorough reading of the entire agreement I find that the marital home was transferred in lieu of the obligation to pay child support.
Counsel for the children argues, in the alternative, that, at the time of divorce, the children had an equitable interest in the home derived from their mother's right of equitable distribution and the court should, therefore, impose a constructive trust for the benefit of the children. They cite Carr v. Carr, 120 N.J. *481 336, 576 A.2d 872 (1990), in support of the proposition that, where the death of a party leaves a spouse without a remedy, a constructive trust may be invoked to provide relief.
The court's exercise of its inherent equitable jurisdiction and general equitable remedies is particularly appropriate in the context of domestic relations. Id. at 351, 576 A.2d 872. "Equities arise and stem from facts which call for relief from strict legal effects of given situations." Ibid.; Untermann v. Untermann, 19 N.J. 507, 518, 117 A.2d 599 (1955). The constructive trust is an appropriate equitable remedy generally invoked to prevent unjust enrichment or fraud. Carr v. Carr, supra, 120 N.J. at 351, 576 A.2d 872; D'Ippolito v. Castoro, 51 N.J. 584, 588, 242 A.2d 617 (1968).
Here, I am satisfied that unjust enrichment will not occur if the children's claim under the divorce decree is denied. It is evident that Virginia Regan was relieved of her responsibility to pay child support in consideration for her interest in the real estate. Apparently, Virginia Regan wanted to ensure that her husband, as the custodial parent, would assume primary responsibility for the children's support, education and welfare. Schumm v. Schumm, 122 N.J. Super. 146, 150, 299 A.2d 423 (Ch.Div. 1973); Boerger v. Boerger, 26 N.J. Super. 90, 104, 97 A.2d 419 (Ch.Div. 1953); see N.J.S.A. 9:2-4. Accordingly, the children lived with him in the marital residence until his death. In this context, Virginia Regan's decision to transfer her interest in the marital premises under the divorce judgment is seen as a safeguard to provide support for the children in the event of sale, as well as a release from her support responsibilities.
In Carr v. Carr, supra, the Court imposed a constructive trust upon property subject to equitable distribution in favor of the wife when the husband died during the pendency of divorce proceedings. Without this equitable relief, the wife would have been left with no remedy. Here, however, the Regan children are not without a remedy. As noted by counsel for Marie *482 Regan, the "application of laws of intestate succession to the present situation gives the Regan children an identical proportional interest in the proceeds of the sale of the property as they would have been entitled to, had their father sold the property during his lifetime." Thus, notions of fairness and equity are not offended by denying the childrens' request for a greater interest than expressly provided in the consent judgment.
Additionally, I find it would be inequitable to arrive at a result that would diminish Marie Regan's intestate share. She married Francis Regan in 1982 and lived with him until his death in 1988. During this period she contributed to the maintenance and value of the Bloomfield property. Further, she assumed the entire financial burden of the home from the time of Mr. Regan's death to the time the premises were sold during the partition action.
Accordingly, the application for distribution of the proceeds pursuant to the consent judgment of divorce is denied. The marital premises are subject solely to the laws of intestate succession and Marie Regan's motion for a 50% share of the proceeds deposited with the court is granted.