746 A.2d 466 (2000)
GNOC, CORP. t/a The Grand, Plaintiff-Appellant,
v.
DIRECTOR, DIVISION OF TAXATION, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued January 24, 2000.
Decided February 25, 2000.
*467 Janyce M. Wilson, Morristown, for plaintiff-appellant (Graham, Curtin & Sheridan, attorneys; Ms. Wilson and Kent L. Schwarz, on the brief).
Marlene G. Brown, Deputy Attorney General, for defendant-respondent (John J. Farmer, Attorney General, attorney; Ms. Brown, on the brief).
Before Judges PETRELLA, BRAITHWAITE and COBURN.
The opinion of the court was delivered by BRAITHWAITE, J.A.D.
Plaintiff, GNOC, Corp. t/a The Grand ("GNOC"), appeals from a summary judgment granted by the Tax Court that dismissed its complaint seeking to set aside the determination of defendant, Director, Division of Taxation ("Director")[1]. The determination directed GNOC to pay the State of New Jersey $158,466 in sales and use taxes pursuant to the New Jersey Sales and Use Tax Act, N.J.S.A. 54:32B-1 to -29 (the "Act"). This appeal concerns the applicability of the Act to complimentary alcoholic beverages provided by GNOC to its patrons at its hotel-casino in Atlantic City for the taxable period of January 1, 1991 through September 30, 1994.
On appeal, GNOC contends: (1) a prior agreement between plaintiff and the Director remains in effect and bars the Director from taxing the alcoholic beverages given to patrons; (2) the Director's interpretation of this agreement "tortures both the language of the agreement" and the Act; (3) the Director deprived plaintiff of due process "in failing to identify the basis for his assessment as to complimentary alcoholic beverages;" (4) "plaintiff's purchase of the alcoholic beverages provided to casino patrons on a complementary basis" constitutes a non-taxable sale for resale; and (5) based on the above arguments, plaintiff's motion for summary judgment should have been granted. We reject these contentions and affirm.
We need not recount at length the background and facts relevant to this appeal. They are set forth fully in the Tax Court's published opinion in a companion *468 case decided on the same day. See Boardwalk Regency Corp. v. Director, Div. of Taxation, 17 N.J.Tax 331 (Tax 1998), rev'd, 18 N.J.Tax 328 (App.Div.1999).
This matter has its genesis in the Director's determination that GNOC owed the State of New Jersey $135,732.40 for sales and use taxes for providing complimentary alcoholic beverages to its patrons. The Director notified GNOC of his determination by way of a written assessment. The assessment did not include a break-down of the amount due; it merely included the amount of the tax liability, interest, and the amount credited. By way of "explanation" of the assessment, the notice included a list of applicable statutes. The explanation page was titled: "Sales & Use Tax N.J.S.A. 54:32[B]-1 et seq." On March 30, 1995, GNOC submitted a formal protest and request for an administrative hearing.
The protest was based on a statutorily authorized closing agreement entered into between the Director and the casino industry in 1981, and subsequently amended in 1986 and 1988. See N.J.S.A. 54:53-1. The relevant language of the 1981 agreement provides as follows:
2. No sales tax will be imposed in the provision of complimentary meals. However, a use tax pursuant to N.J.S.A. 54:32B-6 will be imposed upon the "cost" of a meal. For these purposes, the cost of the meal would be deemed to be 25% of the amount those meals are sold to the public by the casino. However, no sales and/or use tax will be imposed upon the provision of complimentary liquor. Further, no sales and/or use tax will be imposed for any period prior to January 1, 1981.
In 1986, the parties amended their agreement. The relevant portion of the agreement provides:
2. No sales or use tax will be imposed in the provision of complimentary meals or complimentary liquor effective January 1, 1986. For purposes of this amended agreement "complimentary meals" shall mean any transaction where the patron is not required to pay any cash consideration for any portion of the price (including any possible sales tax) of food or (non-alcoholic) beverage.
3. With respect to issuance of coupons to be used by bus patrons or others which are utilized to satisfy a portion of retail price of the meals consumed by such patrons, sales tax will be imposed upon the full value of said meals pursuant to N.J.S.A. 54:32B-2(c); and said sales tax shall be collected from the patrons and remitted pursuant to N.J.S.A. 54:32B-12, -14, -17 and -18. For purposes of this amended agreement the term "coupon" shall mean any coupon, token or other emolument which entitles the holder to a discount or credit on the purchase price of meals or (non-alcoholic) beverage but shall not include coupons or other documents which are accepted in total satisfaction of the purchase price (including any possible sales tax) of such meals or beverage as described in Paragraph 2, above.
In 1988, the agreement was amended again. The amendment was to Paragraph 3 of the 1986 agreement and provides:
3. With respect to issuance of coupons to be used by bus patrons or others, sales tax will be imposed upon the price charged for a meal including nonalcoholic beverages, less the face value of the coupon pursuant to N.J.S.A. 54:32B-3(c); and said sales tax shall be collected from the patrons and remitted pursuant to N.J.S.A. 54:32B-12, -14, -17 and -18. For purposes of this amended agreement the term `coupon' shall mean any coupon, token or other emolument which entitles the holder to a discount or credit on the purchase price of meals or non-alcoholic beverage for which the casino receives no reimbursement.
Essentially, the agreement and its amendments address how the Director will treat complimentary meals provided by the casino to its patrons under the Act. In *469 1981, the parties agreed that a percentage of the cost that would have been charged to the public if the complimentary meal had actually been sold would be subject to a use tax. At the time of the 1986 amendment, fully complimentary meals were exempt from the Act, but meals for which a portion of the cost was paid for with casino coupons were subject to sales tax on the full value of the meals. Thus, the 1986 amendment exempted only fully complimentary meals and alcoholic beverages from tax. Finally, the 1988 amendment subjected the "price" of the meal, less the discount provided by the coupon, to the sales tax. "[T]he 1986 and 1988 agreements abandoned an effort to collect taxes for fully complimentary meals in exchange for an agreement by the plaintiff to collect and pay the sales tax for partially `comped' meals and [non-alcoholic] beverages." Boardwalk Regency, supra, 18 N.J.Tax at 333.
In the Tax Court opinion in this case, the judge set forth the status of sales and use taxes with respect to the sale of alcoholic beverages at the time of the agreement, and after July 1, 1990. He observed:
With regard to alcoholic beverages, the sale of such beverages by a retailer to a customer was specifically exempted from the six percent "retail" sales tax of N.J.S.A. 54:32B-3 beginning July 1, 1980 through July 1, 1990. See N.J.S.A. 54:32B-8.34, repealed by L. 1990, C. 40 § 11. Instead, alcoholic beverages were taxed only under the Alcoholic Beverage Wholesale Sales Tax Act, N.J.S.A. 54:32C-1 et seq., at 7.3 percent of the wholesale price charged to the retailer. See N.J.S.A. 54:32C-3.
In July 1990, N.J.S.A. 54:32B-8.34, the exemption of alcoholic beverages from the six percent "retail" sales tax, was repealed by the Legislature. At the same time, the Legislature repealed the Alcoholic Beverage Wholesale Sales Tax Act. Thus, since July 1, 1990, the receipts from any "retail sale" of alcoholic beverages have been specifically subject to New Jersey's six percent sales tax under the Act. The taxable periods involved in these matters are all after July 1, 1990.
[Trump Plaza, supra, 17 N.J.Tax at 329-30.]
Because of the change in the tax law, specifically the repeal of N.J.S.A. 54:32B-8.34, the exemption for retail sales of alcohol, the Director took the position that the agreement with respect to complimentary alcoholic beverages was "moot." The decision to render this portion of the agreement moot was based on the following language of the agreement:
[I]f legislation is enacted which provides for specific taxability or exemption, the legislation will be held to supersede this Agreement and the Division of Taxation and the casino-hotels will no longer be bound by the Agreement for those taxable periods subject to the new legislation.
The above clause was required to be in the parties' agreement because of the language of N.J.S.A. 54:53-4(b), which in relevant part provides that:
[A] closing agreement with respect to a taxable period ending subsequent to the date of the agreement is subject to any change in, or modification of the law enacted subsequent to the date of such agreement and made applicable to such taxable period, and each closing agreement shall so state.

[Ibid.]
Because the Director concluded that the parties' agreement was superseded by the change in the tax law, he assessed GNOC for the complimentary alcoholic beverages. On October 2, 1996, GNOC filed a complaint in the Tax Court, contesting the tax assessment, and seeking to abate the assessment in its entirety. By this time, the assessment, including interest, totaled $158,466.
The counts of the complaint pertinent to this appeal are counts one and five. Count *470 one sought abatement of the Director's final determination on the basis of the agreement. Count five demanded abatement of the taxes because the Director did not satisfy the notice requirements of N.J.S.A. 54:50-6.
On May 1, 1997, the parties filed a joint partial stipulation of facts. Thereafter, the parties cross-moved for summary judgment, and on January 21, 1998, the Tax Court granted summary judgment to the Director. See Trump Plaza, supra, 17 N.J.Tax at 330.
In deciding this matter, the Tax Court judge concluded that the parties' agreements "have absolutely no bearing on these matters with regard to alcoholic beverages." Trump Plaza, supra, 17 N.J.Tax at 330. He determined that "the agreements merely set forth the law at the time with respect to the taxation of alcohol[ic] beverages." Ibid. Stated another way, the agreement reiterated that because alcoholic beverages were exempt from sales and use taxes when the agreement was made, no liability attached to GNOC when it provided complimentary alcoholic beverages to its patrons.
The judge went on to find that "[t]he Director is not taxing the `provision' of complimentary alcoholic beverages by the casinos to their patrons. The Director has only assessed the tax owed on the purchase of the alcoholic beverages by the casinos from their suppliers." Ibid.
Although we agree with the Tax Court's decision to grant summary judgment to the Director, we disagree that the agreements have no bearing on this matter. "[A]n order or judgment will be affirmed on appeal if it is correct, even though the judge gave the wrong reasons for it." Ellison v. Evergreen Cemetery, 266 N.J.Super. 74, 78, 628 A.2d 793 (App.Div.1993) (citing Isko v. Planning Bd., 51 N.J. 162, 175, 238 A.2d 457 (1968)).

I
We are satisfied that the resolution of this appeal is contingent on the interpretation of the parties' agreement. GNOC acknowledges that the agreement contains language, required by N.J.S.A. 54:53-4(b), which provides that subsequent changes in legislation shall supersede the parties' agreement. It argues, however, that the repeal of the sales and use tax exemption on alcoholic beverages does not satisfy the requirement to supersede the agreement.
As noted above, the language of the agreement provides:
[I]f legislation is enacted which provides for specific taxability or exemption, the legislation will be held to supersede this Agreement and the Division of Taxation and the casino-hotels will no longer be bound by the Agreement for those taxable periods subject to the new legislation.
GNOC argues that the word "specific" in the clause requires that to supersede the agreement, subsequent legislation must impose a sales and use tax on complimentary food and beverages. Because the legislation only repeals the exemption from the tax on alcoholic beverages, and not specifically on complimentary items, GNOC asserts that the legislation does not nullify the agreement. The Director takes the position that the legislation repealing the exemption for alcoholic beverages does override the agreement.
We agree with the Director. We base our support of his decision, in part, on the statute authorizing the Director to enter into closing agreements with taxpayers. N.J.S.A. 54:53-4(b) provides in its entirety as follows:
In any suit, action or proceeding, such agreement, abatement, refund or credit made in accordance therewith, shall not be annulled, modified, set aside or disregarded; provided, however, a closing agreement with respect to a taxable period ending subsequent to the date of *471 the agreement is subject to any change in, or modification of the law enacted subsequent to the date of such agreement and made applicable to such taxable period, and each closing agreement shall so state.

[Ibid.]
This provision is "part of `[a]n act to establish the authority of the Director of the Division of Taxation to enter into closing agreements and compromises with taxpayers within certain limitations.'" Boardwalk Regency, supra, 18 N.J.Tax at 332. (citations omitted) (alteration in original). Although the Director has broad discretion to enter into final and conclusive agreements with taxpayers, he or she cannot enter into an agreement that would nullify and render meaningless future legislative enactments. See id. at 332-33. Adopting GNOC's position would have the effect of rendering the Legislature's repeal of the exemption for sales and use taxes on alcoholic beverages meaningless.
The purpose of the statute authorizing closing agreements and compromises, N.J.S.A. 54:53-1 to -15, is to permit the Director broad discretion to bring about permanent and conclusive closure to an issue of taxpayer liability. See N.J.S.A. 54:53-1, -4. There are, however, limitations placed on the Director's discretion. One limitation is that the Director cannot enter into a closing agreement that precludes the effectiveness of subsequent legislation that would otherwise impact the closing agreement. The Director cannot enter into a closing agreement that exceeds the express or implied authority granted by the Legislature. See generally Public Serv. Elec. & Gas Co. v. New Jersey Dep't of Envtl. Protection, 101 N.J. 95, 108, 501 A.2d 125 (1985); Gloucester County Welfare Bd. v. New Jersey Civil Serv. Comm'n, 93 N.J. 384, 397-99, 461 A.2d 575 (1983).
Although we conclude that the Director cannot enter into a closing agreement that precludes the effectiveness of subsequent legislation, we are also satisfied that the Director did not exceed his authority in entering into this particular agreement because GNOC's interpretation of the agreement is incorrect. GNOC's argument, as noted earlier, is premised on the word "specific" in the subsequent legislation provision of the agreement.
Because general principles of contract interpretation apply to the agreement, the word "specific" should be considered in the context of the agreement, taking into account the agreement's purpose, the surrounding circumstances and the objective the parties sought to obtain. See Tessmar v. Grosner, 23 N.J. 193, 201, 128 A.2d 467 (1957); Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282, 633 A.2d 531 (1993). In construing the meaning of this imprecise term, "`[t]he court's function is to assess what was written in the context of the circumstances under which it was written, and accord to language a rational meaning in keeping with the express general purpose.'" Acme Markets, Inc. v. Wharton Hardware & Supply Corp., 890 F.Supp. 1230, 1243 (D.N.J.1995) (quoting Regan v. Regan, 246 N.J.Super. 473, 478, 587 A.2d 1330 (Ch.Div.1990)). The court must also construe unclear contractual language "in accord with justice and common sense." Krosnowski v. Krosnowski, 22 N.J. 376, 387, 126 A.2d 182 (1956) (citation omitted); Ballantyne House Assoc. v. City of Newark, 269 N.J.Super. 322, 333, 635 A.2d 551 (App.Div.1993). The writing must also be given a reasonable construction. Coolidge & Sickler v. Regn, 7 N.J. 93, 99, 80 A.2d 554 (1951). Thus, the interpretation of the clause should be that which a reasonable, intelligent person would accord to it. See Corn Exchange Nat'l Bank & Trust Co. v. Taubel, 113 N.J.L. 605, 609, 175 A. 55 (1934).
Here, the parties' joint stipulation of facts stated that the 1981 agreement provided that "[n]o sales and/or use tax will be imposed upon the provision of complimentary liquor. Further, no sales or use tax *472 will be imposed for any period prior to January 1, 1981." Although the above is the parties' stipulation, it is taken out of context from paragraph two of the agreement. Paragraph two is not in dispute; it provides as follows:
No sales tax will be imposed in the provision of complimentary meals. However, a use tax pursuant to N.J.S.A. 54:32B-6 will be imposed upon the "cost" of a meal. For these purposes, the cost of the meal would be deemed to be 25% of the amount these meals are sold to the public by the casino. However, no sales and/or use tax will be imposed upon the provision of complimentary liquor. Further, no sales and/or use tax will be imposed for any period prior to January 1, 1981.

[(emphasis added).]
GNOC's presentation isolates the language in the second half of paragraph two and completely disregards the word "however." "Words and phrases are not to be isolated but related to the context and the contractual scheme as a whole, and given the meaning that comports with the probable intent and purpose...." Newark Publishers' Ass'n v. Newark Typographical Union No. 103, 22 N.J. 419, 426, 126 A.2d 348 (1956). The word "however" is "used to indicate a reservation after something conceded." Webster's Third New International Dictionary (1971). In paragraph two of the agreement, "however" is a word of relation that refers to the antecedent language concerning the cost of the meal. Cf. State in the Interest of S.Z., 177 N.J.Super. 32, 35, 424 A.2d 855 (App.Div.1981) (citations omitted) (reiterating the principle that "where no contrary intention appears `referential and qualifying phrases refer solely to the last antecedent.'").
When the language exempting sales and use taxes is considered with the rest of the language of the paragraph, particularly the sentence that begins with "however" and follows the definition of the cost of the meal, the parties' intention becomes clear. In 1981, the parties agreed to exempt GNOC from sales tax on complimentary meals, but also agreed that a use tax would be imposed on twenty-five percent of the cost of the meal to the public. Without clarification, a complimentary meal could very easily have been interpreted to include complimentary alcoholic beverages. However, even though a percentage of the cost of the meal would be subject to the use tax, the law in effect at the time of the agreement exempted alcoholic beverages from the sales and use tax. We are satisfied that the purpose of the language exempting complimentary alcoholic beverages was to avoid having the cost of such beverages included in the twenty-five percent cost that formed the basis for the imposition of the use tax on complimentary meals. Our review of the subsequent amendments to the agreement does not cause us to conclude that any language changes agreed to by the parties altered this original understanding.
Because we are satisfied that the provision exempting complimentary alcoholic beverages was meant to clarify that they could not be taxed pursuant to the parties' formula for taxing complimentary meals, we conclude that the word "specific" does not compel a reading that subsequent legislation must address the taxation of complimentary food and beverages. We therefore hold that the statute repealing the exemption for sales and use taxes on alcoholic beverages supersedes the parties' agreement.

II
Although we have concluded that the alcoholic beverages portion of the parties' agreement is superseded by the change in the law, we note that the Director's interpretation of the word "provision" is unreasonable. With respect to the "provision" of complimentary alcoholic beverages by the casinos to their patrons, the parties' agreement would preclude a tax on the purchase of the same alcoholic beverages by the casinos that they provided to their patrons on a complimentary basis. The Director urges that exempting plaintiff from taxability for the "provision" *473 of complimentary alcoholic beverages does not release plaintiff from a tax obligation for the purchase of the alcohol from the distributor. We previously disposed of this issue in Boardwalk Regency, supra, in which we noted:
We agree that there cannot be both a sales tax on the purchase and a use tax on the enjoyment upon abandonment of the intention to sell an item bought for purposes of resale, and that an agreement as to one had to constitute a settlement of the taxability of both the purchase and use of the item. In other words, because of the interrelationship between the purchase and use of the same item, a settlement as to the sales tax must resolve any claim regarding the use tax with respect to that item, and vice-versa.

[18 N.J.Tax at 334.]
Therefore, we agree with GNOC insofar as the Director's interpretation of the word "provision" tortures the language of the agreement. This conclusion, however, does not affect the ultimate outcome of the appeal. The ultimate outcome of the appeal is governed by the parties' agreement, which is now superseded by the legislation repealing the exemption on alcoholic beverages.

III
GNOC also raises due process issues, claiming that the Director's notice of assessment was wholly inadequate under N.J.S.A. 54:50-6, and that the Director's introduction of a novel legal theory at the hearing before the Tax Court deprived it of due process. N.J.S.A. 54:50-6(c) provides:
An assessment notice ... shall include a statement of the reason for the assessment sufficient to inform a reasonable lay person of the statutory requirements which in the opinion of the director require the assessment, the actions or omissions of the taxpayer which require the assessment, or the nature of the insufficient documentary evidence, if any, which has prompted the assessment; including:
(1) in the case of an underpayment or failure of payment, a statement of the corresponding alleged correct amount and correct date of payment....

[Ibid.]
Here, the Director's assessment notice to GNOC did not include a statement of reasons for the assessment.
"The touchstone of due process is fair notice and an opportunity to be heard." Towne Oaks at South Bound Brook v. Borough of South Bound Brook, 326 N.J.Super. 99, 102, 740 A.2d 684 (App.Div.1999). Due process does not require the imposition of inflexible rules. See, e.g., Nicoletta v. North Jersey Dist. Water Supply Comm'n, 77 N.J. 145, 164-66, 390 A.2d 90 (1978). The Director argues that because GNOC was afforded the opportunity of review in the Tax Court, the taxpayer has been afforded adequate due process. See New York, Susquehanna and W. R.R. Co. v. Vermeulen, 44 N.J. 491, 501-02, 210 A.2d 214 (1965). We agree.
The Tax Court judge granted GNOC discovery to address its due process claims. We note that GNOC's protest letter specifically addressed the issue of complimentary alcoholic beverages and sales and use taxes. It can therefore be inferred that GNOC received adequate notice to comprehend the basis of the assessment. We cannot conclude on this record that GNOC's due process rights were violated.

IV
Finally, GNOC claims that even if the agreement is no longer in effect, the complimentary provision of alcoholic beverages to patrons constitutes a non-taxable sale for resale. We disagree. We previously resolved this issue with respect to non-alcoholic beverages. See Boardwalk Regency, supra, 18 N.J.Tax at 330. We agreed with the Tax Court judge who concluded "that the complimentary providing of non-alcoholic beverages to casino patrons ... `is a transfer for no consideration, or at least for legally insufficient consideration, and does not constitute a *474 "resale" of the beverages.'" Ibid. (citation omitted). Because there was no resale, "`the sale-for-resale exemption disappeared, and [the casino] became, for tax purposes, the consumer or "end-user" of the nonalcoholic carbonated beverages' and, thus, ... `a use tax became due on the beverages [the casino] purchased under the sale-for-resale certificates.'" Ibid. The fact that here we are dealing with alcoholic beverages does not lead to a different result. GNOC is responsible for a use tax on the alcoholic beverages purchased under the sale-for-resale certificates and provided to patrons on a complimentary basis.

V
We conclude that summary judgment was properly granted to the Director because the agreement regarding alcoholic beverages was superseded by the legislative change. Further, the casino's complimentary provision of alcoholic beverages did not constitute a resale for tax purposes, and GNOC was not deprived of due process.
Affirmed.
NOTES
[1] The Tax Court decision is published as Trump Plaza Assoc. v. Director, Div. of Taxation, 17 N.J.Tax 327 (Tax 1998).